In re INDIAN MOTOCYCLE CO., INC., Indian Motocycle Apparel and Accessories, Inc., and Indian Motocycle Manufacturing. Co., Inc., Debtors.

United States of America, Appellant,

v.

Sterling Consulting Corp., Colorado Receiver, and Steven M. Rodolakis, Chapter 7 Trustee, Appellees.

BAP No. MW 00–094.
Bankruptcy Nos. 93–41954–HJB, 93–41955–HJB, 93–42288–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 20, 2003.

Peter Sklarew of the U.S. Department of Justice, Washington, DC, James B. Farmer, United States Attorney, Boston, MA, for the Appellant.

Joseph H. Baldiga of Mirick, O'Connell, DeMille & Lougee, Worcester, MA, for the Appellee.

Before HAINES, DEASY and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

1. The Federal Rules of Civil Procedure shall hereafter be referenced as "Rule __" and the Federal Rules of Bankruptcy Procedure shall be referenced as "Bankruptcy Rule ____."

2. Rule 60(b) is applicable in bankruptcy proceedings through Bankruptcy Rule 9024.

KORNREICH, Bankruptcy Judge.

## INTRODUCTION

This appeal presents three questions concerning the applicability of Fed. R.Civ.P. 60(b) in bankruptcy proceedings.[1] First, should this Panel consider a new and updated request for different relief under Rule 60(b) on an appeal from the order of the bankruptcy court denying the original Rule 60(b) motion? Second, is relief under Rule 60(b) available from an interlocutory part of a final sale order? And, third, is relief under Rule 60(b) available from an order approving a comprehensive settlement with respect to one aspect of that settlement? For the reasons set forth below, the answer to each of these questions is no, and we deny the appeal.

The United States of America, acting through the Internal Revenue Service ("IRS"), has appealed the order of the United States Bankruptcy Court for the District of Massachusetts ("Bankruptcy Court") denying its conditional and alternative requests for relief under Rule 60(b)[2] of discrete parts of three prior orders which limited the size of its administrative claim and authorized Steven Rodolakis, the Chapter 7 Trustee ("Trustee") appointed in the bankruptcy cases, and Sterling Consulting Corp. ("Receiver"), a receiver appointed by the United States District Court for the District of Colorado ("District Court"), to sell jointly the combined bankruptcy and receivership assets and allocate proceeds of sale between

Bankruptcy Rule 9024 differs from Rule 60(b) only in that it contains three exceptions with respect to timing which are not applicable here. The IRS's motion was timely under Bankruptcy Rule 9024 and under Rule 60(b).

them. All three Bankruptcy Court orders resulted largely from struggles and compromises between the Trustee and the Receiver to maximize the distribution to creditors in both jurisdictions. The "1/13/99 Sale Order"[3] allowed the assets to be sold for the sum of approximately $17 million and tentatively allocated up to $3.5 million to the Trustee and approximately $13.5 million plus other consideration to the Receiver; the "9/21/99 Settlement Order"[4] made that allocation final and, among other things, fixed $550,000 as the value of the superpriority lien held by the Receiver as successor in interest to a post-bankruptcy lender;[5] and the "12/30/99 Tax Cap Order"[6] placed a limitation of $1.2 million on tax claims.[7]

## BACKGROUND

The long and convoluted history of these bankruptcy cases is recited here only to the extent necessary for consideration of this appeal.

An involuntary Chapter 7 petition was filed against Indian Motocycle Company, Inc. ("IMCI") and Indian Motocycle Apparel and Accessories, Inc. ("IMAAI") in 1993. The following year, Indian Motocycle Manufacturing Company, Inc. ("IMMI") filed for relief under Chapter 11 of the Bankruptcy Code.[8] The Receiver was appointed receiver of yet another corporation, Indian Motorcycle Manufacturing, Inc. as a result of an action commenced in the District Court in 1995. *See Eller Industries, Inc. v. United States*, CA No. 95–Z–777. During the bankruptcy proceedings, the Receiver acquired 100% of the stock in IMC, IMAAI, and IMMI, as well as certain claims against the debtors. In October of 1995, IMMI's bankruptcy proceeding was converted to Chapter 7

3. This order is actually entitled "Order Approving and Confirming Sale of Debtor's Assets." The IRS states that this order actually set a cap of $3.5 million on the Trustee's allocation of sale proceeds.

4. This docket order approved the "Motion of Trustee to Authorize and Approve Mutual Release and Settlement Agreement with Sterling Consulting Corporation, as Receiver."

5. Under 11 U.S.C. § 364(c)(1), post-bankruptcy credit may be given priority over all administrative expenses, and under § 364(c)(2), such credit may be secured by a lien on property of the estate. *See* 11 U.S.C. §§ 364(c)(1) and (2). Such credit is commonly referred to as a "superpriority lien." Credit was advanced to the post-bankruptcy lender on that basis in this instance.

6. This order is entitled "Findings of Fact, Conclusions of Law and Order Approving Trustee's Amended Final Accounts."

7. This is the second appeal in these cases by the IRS. In the first, *"Indian I"* (*see United States v. Sterling Consulting Corp. (In re Indian Motocycle Co., Inc.)*, 261 B.R. 800 (1st Cir.

BAP 2001)), the Panel reversed the 2/30/99 Tax Cap Order, setting a $1.2 million cap on potential tax liability arising from the sale of assets, because the Bankruptcy Court lacked jurisdiction to estimate post-petition tax liability pursuant to § 502(c). *Id.* at 810. The Panel also determined that the Bankruptcy Court should not have abstained from determining the IRS's tax liability. *Id.* at 807. That decision was entered on April 26, 2001, after the denial of the Rule 60(b) motion on September 5, 2000, which is the subject of this appeal. Although it may be unusual for a trial court to consider relief from an order under Rule 60(b) while an appeal of the same order is pending, it is permissible. *See Com. of Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir.1979) (permitting a Rule 60(b) motion to be filed with the trial court when an appeal is pending without seeking prior leave of the appellate court). The proceeding resulting in the 12/30/99 Tax Cap Order, initiated on the Trustee's emergency motion for approval of final accounts, is the only one of the three orders to which the IRS claims to have been a party.

8. Title 11 U.S.C. §§ 101, *et seq.* ("Code"). Unless otherwise noted, all references to Code sections will be " § ___" or "section ___."

and all three cases were administratively consolidated.

In late 1995, the original Chapter 7 trustee, as a secured party, acquired the right to purchase the stock of American Indian Motorcycle Co., Inc. ("AIM") pursuant to a stock purchase agreement he held as collateral as trustee for the estate of IMCI. To make the payments, the trustee borrowed $210,000 from MBL Investments, Inc. ("MBL"), a proposed purchaser of some of the debtors' assets. That debt was apparently incurred as an ordinary administrative expense. In anticipation of borrowing another $270,000 from MBL, the trustee sought authority from the Bankruptcy Court to give MBL a superpriority lien on all outstanding and future advances. The Receiver objected, asserting that the receivership entity had been the source of the money loaned by MBL to the trustee. After notice and hearing and over the objection of the Receiver, MBL was given a superpriority lien by order dated November 14, 1995 ("1995 Lien Order"). However, that lien was limited "to the extent of validity, perfection, priority, sufficiency and enforceability of the Chapter 7 trustee's interest arising out of the Stock Purchase Agreement." Joint Record on Appeal, Volume I, p. 00122.

In 1996, the Receiver and the original Chapter 7 trustee agreed to a coordinated procedure for the sale of the trademark assets of the receivership and bankruptcy estates. The Trustee became successor Chapter 7 trustee in 1997. On January 13, 1999, following notice and hearing, the Bankruptcy Court entered the 1/13/99 Sale Order authorizing the sale of assets of the bankruptcy estates for total consideration of approximately $17 million cash and certain non-cash components. The IRS was not a party in interest in the bankruptcy cases at that time and it did not receive notice of or participate in the hearing which resulted in that order. The record reflects that the Bankruptcy Court relied upon the Trustee's business judgment that the sale was in the best interest of the estates and that an allocation of $3.5 million would be sufficient to pay all allowed claims against the bankruptcy estates. The balance of the sale proceeds, approximately $13.5 million, along with 2.25 million shares of stock in the acquiring entity, was to go to the Receiver for distribution in the District Court proceedings ("District Court Proceedings").

Despite its willingness to go forward with the sale as proposed, the Receiver was uncertain that its share of the sale proceeds would be sufficient to pay a 100% dividend to creditors in the District Court Proceedings. As a protection from such an outcome, the Receiver insisted upon reserving the right to dip into the Trustee's allocation. To facilitate the sale, the Trustee agreed to place the $3.5 million earmarked for the bankruptcy estates in an escrow account pending resolution of the Receiver's concerns. Until then, disbursements from the escrow account would require the signatures of the Receiver as well as the Trustee. The Bankruptcy Court reserved jurisdiction to determine the final allocation of sale proceeds between the Trustee and the Receiver.[9] Thus, as a result of the Re-

---

9. The only reference to allocation in the 1/13/99 Sale Order was at paragraph 11 which states:

Pursuant to the terms of the Sale Motion and the Letter Agreement, the establishment of the Escrow Account is approved. Three Million Five Hundred Thousand ($3,500,000.00) Dollars of the sale proceeds are to be placed in a depository institution acceptable to the Trustee and the Receiver, so as to yield the maximum reasonable net return on the Escrow Account, subject to the requirements of 11 U.S.C. Section 345. Consistent with the Allocation Issue Juris-

ceiver's continuing interest in the escrow account, the 1/13/99 Sale Order was final as to the sale and less than final on the issue of allocation between Trustee and Receiver. The sale of assets occurred the following month and gave rise to the post-bankruptcy administrative tax claim which is the present concern of the IRS.

The Trustee and Receiver executed a Mutual Release and Settlement Agreement on August 23, 1999 (the "Settlement Agreement") which finalized the Trustee's allocation of $3.5 million then held in escrow. Among other matters, the Settlement Agreement acknowledged the Receiver to be the owner of the superpriority lien originally granted to MBL, settling the source of funds question raised by the Receiver prior to the grant of the lien. It also fixed the amount at $550,000. This amount was less than the $1.1 million claimed by the Receiver and slightly more than the $340,000 to $400,000 admitted by the Trustee. The Settlement Agreement also provided that if any provision of it was determined to be invalid by either the District Court or the Bankruptcy Court, the entire Settlement Agreement would be deemed void *ab initio*.

The Settlement Agreement was approved by the District Court and, following

notice and hearing, it was approved by the Bankruptcy Court on September 21, 1999. The IRS is listed on the certificate of service for that hearing, but the IRS did not appear. According to the "Declaration of Noreene Stehlik," [10] (Assistant United States Attorney, U.S. Department of Justice, Tax Division) which, along with the "Declaration of Revenue Agent" attached to it, was the primary source of evidence presented to the Bankruptcy Court in support of the motion for Rule 60(b) relief, Ms. Stehlik was assigned to defend the interests of the United States in the District Court Proceedings. Ms. Stehlik's declaration states that she had notice of the settlement conference before the District Court which resulted in the Settlement Agreement, and that she did not appear at that meeting. Her declaration also states that she had no notice of the bankruptcy hearings which resulted in the 1/13/99 Sale Order and the 9/21/99 Settlement Order.[11]

Evidence in support of and in opposition to the Settlement Agreement was presented to the Bankruptcy Court through the statements of counsel, without objection by anyone present. A court may accept such statements as evidence in the absence of objection. *Cabral v. Shamban (In re Ca-*

diction Order, any disputes related to the establishment and/or administration of the Escrow Account are to be brought before this Court.
The Letter Agreement, in turn, provides:
5. As claims are resolved and disputes settled, the trustee will update his good faith estimates of cash needed, and the money in the escrow account will promptly be returned to the receiver in a manner consistent with the joint determinations of the trustee and the receiver. If the trustee and receiver cannot agree, the issue will be submitted to the Bankruptcy Court for determination. No money will be used to liquidate claims or pay settlements unless approved by the receiver and the trustee or Ordered by the Bankruptcy Court.

**10.** Joint Record on Appeal, Volume VI, pp. 2000–2003.

**11.** Ms. Stehlik's declaration also states: "And, even if I had received notice of those settlements, I would not have considered the United States to have standing to object since, at those times, there had been no indication whatsoever of any further administrative tax liability. It was not until October of 1999 that the Receiver's motion in the ... [District Court] action first alerted me to any potential issue respecting the debtors' potential tax liabilities." Declaration of Noreene Stehlik, Joint Record on Appeal, Volume VI, pp. 2002.

*bral)*, 285 B.R. 563 (1st Cir. BAP 2002). The only opposition to the compromise was from the United States Trustee who raised questions concerning the payment of post-petition interest to claimants. He was also concerned with the timing (but not the amount or the superpriority lien status) of the $550,000 payment to the Receiver. There were no objections to the overall terms of the settlement, including the amount of the superpriority lien. The Bankruptcy Court found and concluded, based upon the arguments of the Trustee and Receiver, and without objection, that the settlement met the requirements for approval of a compromise set forth in *Jeffrey v. Desmond*, 70 F.3d 183, (1st Cir. 1995).

We have denied the IRS's request that this Panel take judicial notice of various orders and pleadings filed in the Bankruptcy Court and the District Court. Additionally, the Receiver filed a notice of withdrawal of reference in the underlying bankruptcy cases, indicating that all matters relating to the District Court Proceedings and the three Massachusetts bankruptcy cases (including other appeals which were previously pending before U.S. District Court judges in Massachusetts) are now pending before Massachusetts U.S. District Court Judge Keeton, with the exception of this appeal. The Receiver did not request any relief from this Panel with regard to the notice of withdrawal. The IRS responded to that notice, insisting

that the Receiver actually suggested that this Panel had lost jurisdiction of the appeal. The IRS argued that this Panel should still have jurisdiction, but urged us to remand the entire matter for further consideration in light of *Indian I.* We agree with the IRS that our jurisdiction over this appeal continues despite the withdrawal of the reference, *see In the Matter of Powelson*, 878 F.2d 976 (7th Cir.1989), but we decline the invitation to remand.

## JURISDICTION

Pursuant to 28 U.S.C. §§ 158(a) and (b), this Panel may hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). In appropriate circumstances, we also have discretion to hear appeals from interlocutory orders. 28 U.S.C. § 158(a)(3); Fed. R. Bankr.P. 8003; 1st Cir. BAP R. 8003–1. An order denying Rule 60(b) relief is generally considered a final appealable order.[12] *See FDIC v. Ramirez–Rivera*, 869 F.2d 624, 626 (1st Cir.1989)(denial of Rule 60(b) relief from judgment on promissory note was final order); *Matarese v. LeFevre*, 801 F.2d 98, 105 (2d Cir.1986)(order denying motion for relief from judgment denying habeas relief is final appealable order), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).

## STANDARD OF REVIEW

 Reviewing courts generally apply the clearly erroneous standard to findings

---

**12.** This general statement of appellate jurisdiction stems from the finality of the underlying order which is the subject of a Rule 60(b) motion. *See FDIC v. Ramirez–Rivera*, 869 F.2d 624, 626 (1st Cir.1989). Finality is not an issue with regard to the request for relief from the 9/21/99 Settlement Order, but it is an issue with respect to the allocation aspect of the 1/13/99 Sale Order. Nonetheless, this Panel has appellate jurisdiction because the allocation issue became final in the 9/21/99 Settlement Order. The unexplained failure of

the IRS to challenge the allocation of sale proceeds in the context of the 9/21/99 Settlement Order made the denial of relief from the 1/13/99 Sale Order the last word of the Bankruptcy Court on that issue. Thus, the order denying Rule 60(b) relief "conclusively determine[d] a discrete dispute [the allocation of sale proceeds] within the larger case." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 648 (1st Cir. BAP 1998).

of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe,* 257 F.3d 58, 63 (1st Cir.2001). When, as in this instance, the court below has not disclosed the findings and conclusions upon which relief was denied, we will sustain "on any independently sufficient ground made manifest by the record." *See Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 173 (1st Cir.1998)(internal citations omitted).

## DISCUSSION

### A. The Original Rule 60(b) Motion

The IRS asked the Bankruptcy Court to vacate that part of the 12/30/99 Tax Cap Order which placed a $1.2 million cap on tax liability because taxes owing as a consequence of the sale and allocation of proceeds were likely to exceed that amount, relying upon Rule 60(b)(1) (mistake, inadvertence or surprise), (2) (newly discovered evidence) and (4) (judgment is void). Conditioned upon the grant of that relief, the IRS also sought to vacate that part of the 1/13/99 Sale Order which tentatively allocated no more than $3.5 million of the proceeds of sale to the bankruptcy estates under Rule 60(b)(6) (any other reason justifying relief) because (1) it was premised on the Trustee's business judgment that all claims would be paid in full; (2) the IRS was not a party at the time of the entry of the order; (3) it would be grossly unfair not to reconsider the allocation in view of the IRS's estimate of its administrative tax claim arising out of the sale because the allocation of proceeds was apparently based upon debt rather than asset value; and (4) the Trustee's allocation would be further diminished by the Receiver's superpriority lien claim. In the alternative, the IRS asked the Bankruptcy Court to vacate that part of the 9/21/99 Settlement Order which fixed the amount of the Receiver's superpriority lien claim at $550,000. Relief from this order was sought under Rule 60(b)(2) and (6) on grounds that (1) the IRS was not a party at the time of the entry of the order; (2) it did not participate in corresponding proceedings before the District Court; and (3) the agreed upon value of the Receiver's superpriority lien would come off the top of the $3.5 million and further reduce the amount available for distribution to the IRS from the bankruptcy estates.[13]

The Bankruptcy Court's denial of relief was in the form of a simple, handwritten, marginal indorsement stating "DENIED," leaving this Panel with little insight into the Bankruptcy Court's reasoning. We do not know if the bankruptcy judge considered the conditional and alternative nature of the motion and simply premised his denial of relief from the 1/13/99 Sale Order and the 9/21/99 Settlement Order upon his denial of the 12/30/99 Tax Cap Order, or if he dealt with each request separately. Moreover, by the time the IRS filed its brief in this appeal, its original condition—that the $1.2 million tax cap be set aside—had been met through *Indian I,* thus eliminating the need for further review by this Panel of the Bankruptcy Court's denial of

---

13. There was a fourth aspect of the Rule 60(b) motion which was not pursued on appeal. It sought to enjoin the Receiver from distributing sale proceeds in the District Court Proceedings and also sought disgorgement of the $550,000 paid to the Receiver. These requests were conditioned upon the grant or consideration of Rule 60(b) relief by the bankruptcy judge.

relief from the 12/30/99 Tax Cap Order. *See Indian I,* 261 B.R. at 805 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.") (*quoting Church of Scientology of California v. U.S.,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).

## B. The New and Improved Rule 60(b) Motion

■ Recognizing its success in *Indian I* to be of dubious value without a source of payment of its administrative tax claim, beyond the 1.2 million dollars which had been set aside, the IRS changed its approach to the other two underlying orders on appeal. Instead of leading with that part of the 1/13/99 Sale Order which provisionally allocated up to $3.5 million for the payment of claims in the bankruptcy cases as it had in its Rule 60(b) motion in the Bankruptcy Court, the IRS has asked this Panel, in its brief and again at oral argument, to switch the order of the alternatives and look first at that part of the 9/21/99 Settlement Order which fixed the value of the Receiver's superpriority lien claim at $550,000.

Three major reasons were given for this change in approach on appeal. The first is jurisdictional. The IRS contends that the Bankruptcy Court has exclusive jurisdiction of the superpriority lien claim. So, were we to reverse the denial of Rule 60(b) relief with regard to the order fixing the value of that lien claim and remand with instructions, the IRS presumes that it would be able to seek meaningful relief in the Bankruptcy Court without having to approach the District Court. On the other hand, the IRS now asserts that our reversal of the tentative allocation aspect of the 1/13/99 Sale Order would be of little significance without parallel relief from the District Court, the likelihood of which it believes to be doubtful.

■ The second reason is timing. The IRS concedes in its brief "that, at least at this time, it cannot demonstrate that it is entitled to have the $3.5 million cap on the amount available to pay bankruptcy claims vacated as a matter of law." Opening Brief of Appellant at 6. This statement alone is a sufficient basis for sustaining the Bankruptcy Court on the allocation issue, because if true now, it was true at the time of the Rule 60(b) motion. Parties are bound by the positions they take in their briefs and at oral argument. *See Whitney Bros. Co. v. Sprafkin,* 3 F.3d 530, 534 n. 4 (1st Cir.1993).

The third reason for the shift in approach on appeal is a change in the nature of the relief requested. Here, for the first time, the IRS argues that the Bankruptcy Court should have deferred, or denied without prejudice, the motion for relief from that part of the 1/13/99 Sale Order which tentatively allocated the proceeds of sale pending the IRS's determination of the administrative tax liability. Thus, we have been asked to reverse and remand that aspect of that order with instructions that Rule 60(b) relief be deferred pending that determination.

■ We decline to take the change in approach suggested by the IRS, or to consider the new bases for relief or the additional facts raised on appeal, for several reasons. First, we need not consider arguments raised for the first time on appeal. *Noonan v. Rauh (In re Rauh),* 119 F.3d 46, 51 (1st Cir.1997). Second, when, as in this instance, a lower court's order is unexplained, a reviewing court may affirm a correct result on "any independently sufficient grounds *made manifest by the record.*" *Hodgens,* 144 F.3d at 173 (emphasis supplied; internal citations omitted). In other words, this Panel's review should be

limited to the record as it existed before the Bankruptcy Court. If an appeal is ripe, this Panel should not be influenced by what has occurred since then or by what might occur in the future. Third, in effect the Panel has been asked to entertain a new and updated Rule 60(b) motion. Doing so would entail a direct review by us of the underlying orders which are beyond our jurisdiction in this context. Rule 60(b) exists to permit a trial court to reconsider its own orders. It is not a substitute for a timely filed appeal, and "cannot resurrect appellants' expired right to contest the merits of the underlying judgment, nor bring the judgment itself before us for review." *Rodriguez–Antuna v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 2 (1st Cir.1989); *see also Bradshaw v. United States (In re Bradshaw)*, 283 B.R. 814, 818 n. 7 (1st Cir. BAP 2002) (to enlarge the appeal period under Fed. R. Bankr.P. 8002(b), a Rule 60(b) motion must be filed within ten days of the order from which relief is sought). Accordingly, we will not consider the IRS's revised request for Rule 60(b) relief.

## C. Finality and the 1/13/99 Sale Order

▮▮▮▮ It is well established that "[b]ecause Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional circumstances." *Davila–Alvarez*, 257 F.3d at 63–64 (internal citations and quotations omitted). However, the absence of exceptional circumstances is not the only basis for sustaining a denial of relief. Other deficiencies, if present, will eliminate the need to determine the existence of exceptional circumstances. For example, the denial of a Rule 60(b) motion will be sustained if the motion fails to meet the finality requirement. *See Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 526–27 (N.D.N.Y.1995)(order dismissing fewer than all defendants was not final for purposes of Rule 60(b)), *aff'd*, 108 F.3d 462 (2d Cir.1997).

▮▮▮▮ To be eligible for Rule 60(b) relief, an order must be final. "On motion and upon such terms as are just, the court may relieve a party … from a *final* judgment, order or proceeding …" Fed. R.Civ.P. 60(b)(emphasis supplied).[14] *See Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 4 (1st Cir.2001); *United States v. Baus*, 834 F.2d 1114, 1118 (1st Cir.1987) ("By its own terms, Rule 60(b) applies only to final judgments."). "We recognize that finality is [to be] given a flexible interpretation in bankruptcy, … where necessary to accommodate concerns unique to the nature of bankruptcy proceedings." *Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington)*, 992 F.2d 3, 5 (1st Cir.1993)(internal quotations and citations omitted). Although finality is elastic, "a bankruptcy court order is not appealable 'unless it conclusively determines a discrete dispute within the larger case.'" *Fleet Data*, 218 B.R. at 648 (*quoting In re Harrington*, 992 F.2d at 5). If not appealable, an order is not ripe for

---

**14.** Rule 60(b) provides, in pertinent part:

 **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) …; (4) the judgment is void; (5) …; (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. …

Rule 60(b) relief. *Baus*, 834 F.2d at 1119 ("The stated test for finality under Rule 60(b) ... is whether the judgment is appealable.").

▓▓▓ The 1/13/99 Sale Order, to the extent it authorized the sale of assets, is a final order. *See Jeremiah v. Richardson*, 148 F.3d 17, 22 (1st Cir.1998)(bankruptcy court order approving sale is a final order). However, the sale was not challenged by the IRS. The only aspect of that order from which the IRS sought relief was paragraph 11 which provisionally assigned the Trustee's share of the proceeds to an escrow account pending final resolution of the disputes between him and the Receiver. Paragraph 11 is severable from the balance of the 1/13/99 Sale Order because it left unresolved the allocation of the sale proceeds. That it may have fixed the up side at $3.5 million did not make it final. Until the down side was fixed, the Receiver had an interest in the funds. In proceeding as it did, the IRS acknowledged the uniqueness and severability of paragraph 11. Moreover, the interlocutory nature of that paragraph cannot be denied in light of the final resolution of the allocation question approved by the Bankruptcy Court on September 21, 1999.

▓▓▓ A bankruptcy court order may contain final and less than final provisions. *See In re Colon*, 941 F.2d 242, 245 (3d Cir.1991). Paragraph 11 of the 1/13/99 Sale Order was not final. On that basis alone we may sustain the Bankruptcy Court's denial of Rule 60(b) relief from that order.[15] *See Hodgens*, 144 F.3d at 173. For the above reasons, and because the IRS has conceded that it is not entitled to relief as a matter of law, we conclude that there was no abuse of discretion with respect to the denial of relief from the 1/13/99 Sale Order.

## D. The 9/21/99 Settlement Order

▓▓▓ The IRS sought relief in the Bankruptcy Court from the Order approving the August 23, 1999 settlement agreement between Trustee and the Receiver on the basis of Rule 60(b)(2) ("newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)") and (6)("any other reason justifying relief from the operation of the judgment").[16] However, the IRS's request for relief under (b)(6) fails because that provision may not be involved when subparagraphs (b)(1)-(5) are raised. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)(*citing Klapprott v. United States*, 335 U.S. 601, 613, 69 S.Ct. 384, 93 L.Ed. 266 (1949)); *Baus*, 834 F.2d at 1121. "Because Rule 60(b)(2) is aimed at correcting erroneous judgments based on the unobtainability of evidence, the burden is on the party presenting the new evidence to demonstrate that the missing evidence was of such a material and controlling nature as would probably have changed the outcome." *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir.1995) (internal quotations and citations omitted). To be unobtainable, evidence must exist, but be beyond reach. For the reasons that follow, we conclude that the IRS has not met its burden.

---

**15.** A trial court also has the inherent power to reconsider its own interlocutory orders outside of Rule 60(b). *See Caravi Distrib., Inc. v. Hitachi Home Prod. (America), Inc.*, 842 F.Supp. 1492, 1494 (D.P.R.1994). We have not discussed this because it has not been raised by the parties and because the IRS has conceded that, presently, it is not entitled to have the $3.5 million allocation vacated as a matter of law.

**16.** Relief under Rule 60(b)(1) was first invoked on appeal and is not properly before us. *In re Rauh*, 119 F.3d at 51.

Again, we will begin our analysis with the essentials. Relief under Rule 60(b) is available to a "party . . . from a final judgment, order or proceeding . . . ." These prerequisites were met. The 9/21/99 Settlement Order was a final order. *See Hill v. Burdick (In re Moorhead Corp.),* 208 B.R. 87 (1st Cir. BAP 1997)(holding that bankruptcy court order approving compromise is a final order), ·*aff'd,* 201 F.3d 428, 1998 WL 1267445 (1st Cir.1998).

▮ Although neither a party to the settlement, nor a party in interest in the bankruptcy cases at the time of the settlement (*see Indian I,* 261 B.R. at 803),[17] the IRS, as a subsequent administrative expense claimant, was bound by the Trustee's agreement with the Receiver. The Trustee acted as a fiduciary representing the interests of the estate and its creditors. Therefore, when he settled with the Receiver, with court approval, creditors were bound by his action. *See Petitioning Creditors of Melon Produce, Inc. v. Braunstein,* 112 F.3d 1232, 1240 (1st Cir. 1997) (prefiling unsecured creditors are bound by a trustee's action). The IRS was a potential administrative tax claimant, not a prefiling creditor, but this Panel sees no reason to distinguish between administrative claimants and prefiling creditors in this regard. Both are governed by the priorities of distribution under the Code and an administrative claimant is paid ahead of unsecured creditors. When the IRS became an administrative tax claimant, it too was bound by the Settlement Agreement. Thus, it had standing as a party under Rule 60(b) to seek reconsideration of the 9/21/99 Settlement Order.

▮ To obtain relief from a final order, however, a moving party with standing must also demonstrate that other prerequisites exist, including: (1) timeliness, (2) exceptional circumstances, and (3) the absence of unfair prejudice to the opposing party. *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co, Inc.,* 953 F.2d 17, 20 (1st Cir.1992). The IRS's motion was timely, but no exceptional circumstances justifying relief were given; moreover, had the Bankruptcy Court granted relief, the Trustee and Receiver would have been unfairly prejudiced.

### 1. Timeliness

▮ To be timely under Rule 60(b)(2), a motion must be filed within a reasonable time, but not more than one year after the order. What is a reasonable time depends on the circumstances. *Cotto v. United States,* 993 F.2d 274, 280 (1st Cir.1993). The motion was filed approximately nine months after the 9/21/99 Settlement Order. That delay was not unreasonable in light of the complexities of the case and the investigation performed by the IRS.

### 2. Exceptional Circumstances

▮ The exceptional circumstances alleged by the IRS are: "(1) the government was not a party to the bankruptcy cases at the time; (2) the similar approval motion

---

**17.** While the IRS was included in the certificate of service for those receiving notice of the hearing, it did not appear at the hearing. The record suggests that, at the time of that hearing on September 21, 1999, the IRS had no understanding of the magnitude of its claim or the consequences of its silence. It did not become aware of the Trustee's tax liability until October of 1999. *See* Declaration of Noreene Stehlik, Joint Record on Appeal, Volume VI, p. 2002. "In general, an entity that does not hold a financial or legal stake in the case is typically excluded from the definition of 'party in interest.' " 7 COLLIER ON BANKRUPTCY ¶ 1109.02[2][b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev.2002).

filed in the Colorado court was not served on counsel for the government therein (and neither was counsel for the government invited to the settlement conference at which the agreement was hammered out before Judge Schlatter); (3) most fundamentally, the $550,000 superpriority lien is inconsistent with and irreconcilable with the allocation of the coordinated sale proceeds." United States' Motion for Relief from 1/13/99, 9/21/99 and 12/30/99 Orders, Joint Record on Appeal, Volume V, pp. 1564–5. All three statements are expressions of the IRS's disappointment with the Trustee's agreement to fix the Receiver's superpriority claim at $550,000, with the approval of the District Court and the Bankruptcy Court, and the payment of that lien claim ahead of its own administrative tax claim.[18]

This Panel has already agreed that the IRS did not have a meaningful opportunity to be heard at the hearing on September 21, 1999, but that deprivation was cured with the filing of the request for relief under Rule 60(b). The IRS's concern with the failure of notice and hearing in the District Court is misplaced. Such a concern should have been addressed to the District Court. Finally, the focus on the superpriority lien claim is also misplaced. The fixing of the amount of the lien claim was only one aspect of an integrated settlement agreement.[19] The 9/21/99 Settlement Order approved the settlement

agreement in its entirety. As a result, the Bankruptcy Court was justified in denying reconsideration of one part of the agreement.[20]

 Unlike the allocation aspect of the 1/13/99 Sale Order, which was less than final and severable from the balance of that order, the resolution of the superpriority lien was an integral part of a global settlement. "Stipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factors as would undo a contract." *In the Matter of North Broadway Funding Corp.*, 34 B.R. 620, 621–622 (Bankr.E.D.N.Y.1983). As with a contract, a compromise is either accepted or rejected *in toto*. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1387 (D.Ariz.1989), *aff'd*, 955 F.2d 1268 (9th Cir.1992). This is particularly true, when, as in this instance, the agreement contains a no-severance provision.

 Compromises are generally approved if they meet the business judgment of the trustee.

Application of the business judgment rule in the context of the administration of the bankruptcy estate achieves similar objectives. If estates are to be administered outside the purview of the bankruptcy court, then the system

---

18. The IRS claim for taxes arising from the 1999 sale of the trademark assets of the debtors would be entitled to administrative claim status pursuant to § 503(b)(1)(B)(i), superior to unsecured claims, but subordinate to the Receiver's superpriority lien claim and other lien claims. There is no suggestion in the record that the IRS asserts a lien for its claim.

19. The IRS did not challenge any other part of the settlement, including those provisions which made the $3.5 million allocation final and gave the District Court jurisdiction of tax claims in the bankruptcy cases.

20. The IRS argues on appeal that § 502(j) and Fed. R. Bankr.P 3008 would also justify the relief it seeks. This argument fails for several reasons: (1) the Panel will not consider arguments raised for the first time on appeal; (2) the Panel has already determined that the IRS had standing to be heard on its Rule 60(b) motion, and neither § 502(j) nor Rule 3008 would provide it further relief; and (3) the Panel will not consider, in isolation, a challenge to just one provision of a comprehensive settlement.

should encourage competent individuals to serve as trustees of the bankruptcy estates. The reorganization or liquidation of a distressed debtor requires as much, if not more, creativity and risk-taking as the management of a healthy entity. Bankruptcy courts should be no more willing to second guess competent, disinterested trustees and debtors-in-possession than other courts are willing to second guess competent, disinterested directors.

*In re Dalen,* 259 B.R. 586, 610 (Bankr. W.D.Mich.2001). When presenting a proposed action to a court, "a trustee's obligation to disclose requires only an honest and relatively complete accounting of what he knows, not an account that is letter perfect or born of omniscience." *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 9 (1st Cir. 1999), *cert. denied,* 530 U.S. 1230, 120 S.Ct. 2661, 147 L.Ed.2d 275 (2000). Significantly, the IRS does not contend that the Trustee was less than honest or complete when he presented the settlement to the Bankruptcy Court.

 At the hearing on the settlement, the Bankruptcy Court weighed the appropriate factors for approval of a compromise. Those factors include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *Desmond,* 70 F.3d at 185. The

Trustee outlined the history of disputes among the Trustee and Receiver (of which the bankruptcy judge, having overseen the bankruptcy cases for the previous six years, was well aware). The compromise, in addition to resolving the amount of the Receiver's superpriority lien, also settled many other issues, including the Receiver's claims against the bankruptcy estates, and the Receiver's claim to and control over the funds in escrow. Essentially, the compromise opened the way for the Trustee to distribute the sale proceeds to creditors of the bankruptcy estates.

We also note that the lien itself had already been allowed in 1995. The 1995 Lien Order, granting the superpriority lien, was issued pursuant to § 364, and was a final order. *See Bensten v. Grant (In re Gloria Mfg. Corp.),* 65 B.R. 341 (E.D.Va.1985). Section 364 provides protection to lenders who finance trustees in bankruptcy cases. "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide 'incentives to the creditor to extend post-petition credit.'" *In re Florida West Gateway, Inc.,* 147 B.R. 817, 819 (Bankr.S.D.Fla. 1992) (citations omitted). That protection to lenders is substantial. "[A] lender that extends credit in reliance on a financing order is entitled to the benefit of that order, even if it turns out to be legally or factually erroneous." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1355 (7th Cir.1990). Indeed, pursuant to § 364(e), the 1995 Lien Order could not have been challenged absent a stay pending appeal.[21]

---

**21.** Section 364(e) provides:

The reversal or modification on appeal of an authorization under this section to obtain credit and incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so

incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such

In apparent awareness of § 364(e), the IRS did not challenge the validity and enforceability of the lien for any reason, including the limitation in the 1995 Lien Order that it not extend beyond the Trustee's interest in the stock purchase agreement. Nor did the IRS challenge the absence of an actual assignment of the lien granted to MBL.[22] Instead, the IRS grounded its request for relief on "new information" showing the unfairness of a compromise which allowed the Trustee to give the Receiver priority over the IRS in the distribution of the proceeds of sale which had been allocated to the bankruptcy estates.

According to the IRS, the lien agreement in the settlement had permitted the Receiver to recover funds which had been advanced to the Trustee to the acquire stock in AIM even though the Receiver had been allocated 100% of the proceeds of sale of the AIM assets. This was particularly irksome to the IRS because as the shareholder of the bankrupt corporations, the Receiver should have been the last party in interest in the bankruptcy case to receive a distribution.[23] While these facts may have been news to the IRS, there is little doubt that they were known to others at the hearing on September 21, 1999.

Everyone else at that hearing was aware that the agreed upon amount of $550,000 was more than the liability acknowledged by the Trustee.[24] They also knew that the superpriority lien would entitle the Receiver to be paid that amount ahead of every other creditor. Indeed, this enhancement of the Receiver's status caused the bankruptcy judge to insist that other allowed claims be paid immediately. This brings us to the heart of the problem. None of this was of concern to any party, including the IRS, when the settlement was approved because it was then understood by all that the $3.5 million dollars which had been allocated to the Trustee would be enough to pay all allowed claims in full.

The real "new information" presented in the Rule 60(b) motion which by due diligence could not have been discovered at the time of the settlement hearing was that as of June 22, 2000, the IRS estimated its administrative tax claim for 1999 to be over $4 million. See Declaration of Revenue Agent, Joint Record on Appeal, Volume VI, pp. 2011–2021. As a result, it is doubtful that the IRS's claim will be paid in full.

Despite this new information, the IRS has failed to meet its burden. No one, including the IRS, had an inkling of the magnitude of the IRS claim until well after the September 21, 1999 hearing. In fact, at the time the appellate briefs were filed, the precise amount of the tax claim was unknown. Absent a showing that the Trustee's consent to the agreement resulted from fraud or collusion, the Bankruptcy Court was justified in denying reconsideration. As noted previously, the trustee's business judgment need not be "born of omniscience." In re Mailman Steam Carpet Cleaning Corp., 196 F.3d at 9. To rule

debt, or the granting of such priority of lien, were stayed pending appeal.

**22.** In fact, the IRS acknowledges that advances totaling $386,128 were made with court approval, of which $340,000 was attributable to payments made under the stock purchase agreement. The remaining $48,128 was loaned to the Trustee for administrative expenses.

**23.** Shareholders are designated as equity security holders (§ 101(17)), and under § 726, they do not receive any distribution until all other claims are paid in full.

**24.** The amount was a compromise of the $1.1 million claimed by the Receiver, and the $340,000 to $400,000 admitted by the Trustee.

otherwise would allow a compromise to be set aside whenever the outcome was other than as intended. This possibility would discourage parties from compromising disputes with trustees in bankruptcy cases.

### 3. Unfair Prejudice

The comprehensive settlement agreement resolved all disputes between the Trustee and Receiver, including the amount of the superpriority lien claim. It also enabled the Trustee to make distribution to the holders of allowed claims at the end of 1999. The Trustee and Receiver and all parties in interest in their respective estates who were bound by that agreement were justified in relying upon its approval by the Bankruptcy Court and the District Court. Setting it aside would have resulted in unfair prejudice to them. Absent a showing of fraud or collusion, or that the Trustee was less than straightforward in his presentation of the settlement, the Bankruptcy Court was justified in denying relief.

### *CONCLUSIONS*

The appeal of denial of reconsideration of the 12/30/99 Tax Cap Order is dismissed as moot.

There was no abuse of discretion in the Bankruptcy Court's denial of the request for reconsideration of the 1/13/99 Sale Order and the 9/21/99 Settlement Order. Accordingly, the Bankruptcy Court's denial of the IRS's motion under Rule 60(b) for reconsideration of the 1/13/99 Sale Order and the 9/21/99 Settlement Order is AFFIRMED.