Vito Anthony LAFATA, Debtor.

Eastern Savings Bank fsb, Appellant,

v.

Vito Anthony Lafata and Denise
M. Pappalardo, Chapter 13
Trustee, Appellees.

BAP No. MW 05–055.
Bankruptcy No. 04–44511–JBR.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 26, 2006.

James M. Liston, Thomas M. Looney, Boston, MA, on brief for Appellant.

Laurel E. Bretta, Medford, MA, on brief for Appellee, Vito Anthony Lafata.

Before LAMOUTTE, VAUGHN and DEASY, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Eastern Savings Bank fsb ("Eastern") appeals from the bankruptcy court's October 21, 2005, order denying relief under Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") from three orders which had the effect of modifying and bifurcating the $195,340 secured claim asserted by Eastern. Eastern argues that the bankruptcy court erred in denying relief because the underlying orders were based on false and misleading representations by Vito Anthony Lafata (the "Debtor") that he owned certain real estate adjacent to his residence. For the reasons set forth below, we **AFFIRM**.

### BACKGROUND

This case involves three contiguous parcels of land located in Methuen, Massachusetts, which were originally owned by the Debtor's ex-wife, Gail Ness, as Trustee of the Enfield Street Realty Trust.[1] One of the parcels has an address of 31 Enfield Avenue ("Enfield Property"). The other two parcels, both of which border the Enfield Property on one side, are essentially unimproved lots which together have an address of 26 Jasper Street ("Jasper Street Property").

The Enfield Property contains a small single family dwelling with a shed which is primarily used as rental property. It has another single family dwelling with a shed where the Debtor resides, sometimes with a roommate. Although most of the Debtor's residence is located on the Enfield Property, approximately 8 to 10 feet of the house encroaches on the Jasper Street Property. Because of this encroachment, the Jasper Street Property is a non-conforming lot that cannot be developed. When Mrs. Ness transferred the Jasper Street Property to the Debtor as part of a divorce settlement, both parties believed that the Debtor's residence was entirely located within the boundaries of the Jasper Street Property.

In July 2003, the Debtor executed a note in favor of Eastern in the principal

---

1. Gail Ness is also known as Gail Lafata or Gail Raulinaitis. She will be referred to as Gail Ness or Mrs. Ness.

amount of $165,000, secured by a mortgage on the Jasper Street Property. Although the majority of the Debtor's residence is located on the Enfield Property, the mortgage description did not encompass that lot due to the erroneous belief that the dwelling was entirely located on the Jasper Street Property.[2] The parties disagree about the extent of the property securing the mortgage. The Debtor argues that the mortgage encompasses only the unimproved Jasper Street lot and the small portion of the dwelling which encroaches upon it. Eastern argues that its mortgage covers the Jasper Street Property and the Debtor's entire residence by virtue of the encroachment.

On August 4, 2004, the Debtor filed declarations of homestead with respect to both the Enfield Property and the Jasper Street Property. The next day, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.[3] On Schedule A, the Debtor identified his real property as follows: "Debtor's residence 26 Jasper Street and 31 Enfield Street, Methuen, Massachusetts—adjoining lots residence is on 2 of 3 lots—3rd lot 500 sq. ft."

Eastern filed a proof of claim asserting a $195,340.28 secured claim. On August 5, 2004, the Debtor filed an objection to Eastern's proof of claim, a Motion for Determination of Secured Status Under 11 U.S.C. § 506 ("Bifurcation Motion"), and a Chapter 13 plan. Claiming that the value of the Jasper Street Property securing the Bank's mortgage was only $18,500, the Debtor sought to bifurcate the Bank's claim into a secured claim of $18,500, and an unsecured claim of approximately $131,500.

On August 27, 2004, Eastern filed (i) an objection to the Bifurcation Motion; (ii) an objection to confirmation of the Chapter 13 plan; and (iii) a response to the Debtor's objection to its proof of claim. Eastern argued that it held a mortgage on the Debtor's entire principal residence, and that the Debtor was barred from bifurcating its claim pursuant to the antimodification provisions of § 1322(b)(2).[4] Eastern also claimed that, even if its secured claim was subject to modification, the combined value of the Enfield Property and the Jasper Street Property was $219,962.00. Eastern did not submit an appraisal for the Jasper Street Property.

The City of Methuen also filed an opposition to the Bifurcation Motion on the grounds that the Debtor was not the record owner of the Enfield Property. The Debtor filed a response stating:

> The Debtor asserts that his [sic] is the true and rightful owner of said property and appends hereto an executed deed from Gail Ness f/k/a Gail LaFata f/k/a Gail Raulinaitis, Trustee of the Enfield Street Realty Trust, u/d/t dated September 30, 1993 and recorded at the Essex North Registry of Deeds as attached hereto.

Attached to the Debtor's response was a copy of a deed dated June 4, 2004 by Mrs. Ness purporting to convey the Enfield

---

**2.** Apparently, due to an erroneous plot plan, everyone believed that the Debtor's residence was entirely located within the boundaries of the Jasper Street Property, and that a mortgage on the Jasper Street Property would encompass the Debtor's residence. It was not until after the closing, when the Debtor attempted to get permits from the City of Methuen, that he discovered that the majority of the house sat on the Enfield Property.

**3.** All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

**4.** Section 1322(b)(2) prohibits a Chapter 13 plan from modifying a claim secured only by a security interest in real property that is the debtor's principal residence.

Property to the Debtor.[5] There were no notations on the deed indicating that it had been recorded. The bankruptcy court ultimately overruled the opposition due to the "change of ownership."

The bankruptcy court held a nonevidentiary hearing on October 5, 2004, and ordered the parties to file supplemental memoranda. The parties complied, and the bankruptcy court held another nonevidentiary hearing on November 23, 2004. On December 8, 2004, the bankruptcy court issued a Memorandum of Decision, and the following three orders (collectively, the "December 8th Orders"):

(1) Order on Debtor's Motion for Determination of Secured Status holding: "The [motion] is ALLOWED. The Bank holds an allowed secured claim of $18,500.00. The objection of the Bank to the Motion is overruled";

(2) Order on Objection of Eastern Savings Bank to Confirmation of Chapter 13 Plan holding: "[T]he objection of the Bank to Confirmation of the Chapter 13 Plan is OVERRULED";

(3) Order on Debtor's Objection to Claim of Eastern Savings Bank, FSB, holding: "[T]he Debtor's objection to the Claim of Eastern Savings Bank, FSB is SUSTAINED. The Bank holds an allowed secured claim in the amount of $18,500.00 and an unsecured claim for the balance due under the note."

The December 8th Orders had the effect of modifying and bifurcating the $195,340 secured claim asserted by Eastern into a secured claim in the amount of $18,500 and an unsecured claim for the balance due under the note. The Debtor appealed to

the United States District Court for the District of Massachusetts.

In the meantime, Eastern commenced an adversary proceeding seeking to reform its mortgage so as to cover all or part of the Enfield Property to include the Debtor's entire dwelling. Discovery ensued, including depositions of the Debtor and his ex-wife, Gail Ness. Eastern claims that through deposition testimony, it discovered that the June 4, 2004 deed of the Enfield Property had never been delivered to the Debtor and, consequently, that the Debtor did not own that property.

On July 7, 2005, the District Court entered an order affirming the December 8th Orders. Fifteen days after the District Court's decision, on July 22, 2005, Eastern filed a motion in the bankruptcy court seeking relief from the December 8th Orders pursuant to Rule 60(b) ("Rule 60(b) motion"). As grounds for the motion, Eastern asserted that the bankruptcy court's rulings were based upon the Debtor's "materially false and misleading" statements that he owned the Enfield Property, which the bankruptcy court relied upon in concluding that Eastern's mortgage was secured only by an unimproved lot with an encroachment. Eastern also moved for, and was granted, an extension of time to file an appeal of the District Court's order to allow time for the Rule 60(b) motion to be heard.

On August 30, 2005, the bankruptcy court held a consolidated hearing on the Rule 60(b) motion, plus numerous other motions pending in the adversary proceeding. At the outset of the hearing, the bankruptcy judge ruled that he did not have jurisdiction to consider the Rule 60(b)

---

**5.** It is undisputed that at some point in time, Mrs. Ness agreed to transfer the Enfield Property to the Debtor, and, therefore, executed the June 4, 2004 deed. The deed was sent to the Debtor's then-counsel, Richard P. Consoli, to be held in escrow pending the Debtor's payment of certain amounts allegedly owed to Mrs. Ness. The deed was never delivered to the Debtor, nor was it recorded in the Essex North Registry of Deeds.

motion in light of the appeal of the underlying orders, and denied the Rule 60(b) motion without prejudice. On that same date, the bankruptcy court issued an order stating that the Rule 60(b) motion was "taken under advisement."

Thereafter, Eastern filed an appeal of the District Court's order to the First Circuit Court of Appeals.[6] It also submitted a memorandum setting forth well-established First Circuit law regarding the proper procedures for handling Rule 60(b) motions while appeals are pending,[7] and asking the court to address its previously filed Rule 60(b) motion. On October 21, 2005, the bankruptcy court issued an order denying Eastern's Rule 60(b) motion, stating, without discussion: "Eastern has failed to meet its burden under Rule 60(b)(2), Rule 60(b)(3) and/or Rule 60(b)(6)." This appeal followed.[8]

### JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801

(1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

■ An order denying relief from judgment under Rule 60(b) is generally considered a final appealable order. *See Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co., LLC)*, 316 B.R. 406, 413 (1st Cir. BAP 2004); *United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co., Inc.)*, 289 B.R. 269, 276 (1st Cir. BAP 2003).

### STANDARD OF REVIEW

■ Reviewing courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms. Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). Bankruptcy courts have broad discretion in deciding motions for relief under Rule 60(b), and we review such rulings only for abuse of that discretion. *See Indian Motocycle*, 289 B.R. at 276 (citing *Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 63 (1st Cir.2001)). We find an abuse of discretion if we become convinced that "the court below committed a clear error of judgment in the conclusion it reached upon a weighing of all the relevant factors." *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660 (1st Cir.1990). When, as in this instance, the court below has not disclosed the find-

---

6. The Court of Appeals has stayed that appeal pending resolution of this appeal.

7. *See Zoe Colocotroni*, 601 F.2d 39 (1st Cir. 1979).

8. Although Eastern filed an Election to Appeal to District Court, the bankruptcy court determined that the election was ineffective because it was not timely.

ings and conclusions upon which relief was denied, we can sustain "on any independently sufficient ground made manifest by the record." *Indian Motocycle,* 289 B.R. at 278 (citing *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 173 (1st Cir.1998)).

## DISCUSSION

### I. Effect of Notice of Appeal on Rule 60(b) Motion

As an initial matter, it is important to review the effect of the appeal of the underlying December 8th orders on the Rule 60(b) motion. As noted above, the bankruptcy judge initially ruled that he did not have jurisdiction to consider the Rule 60(b) motion in light of the appeal of the underlying orders, and denied the Rule 60(b) motion without prejudice. However, as Eastern correctly pointed out in a memorandum filed with the bankruptcy court, there is well-established First Circuit law regarding the proper procedures for handling Rule 60(b) motions while appeals are pending.

■ In the First Circuit, parties may file a Rule 60(b) motion in the trial court regarding orders which have been appealed without leave of the appellate court. *See Comm. of Puerto Rico v. SS Zoe Colocotroni,* 601 F.2d 39, 42 (1st Cir.1979). The procedure is as follows:

> [W]hen an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the [trial] court without seeking prior leave from us. The [trial] court is directed to review any such motions expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit, bearing in mind that any delay in ruling could delay the pending appeal. If the [trial] court is inclined to grant the motion, it should issue a brief memorandum so indicating. Armed with this, movant

may then request this court to remand the action so that the [trial] court can vacate judgment and proceed with the action accordingly.

*Id.* (footnote omitted). Moreover, if the trial court is inclined to deny the Rule 60(b), it should do so promptly so that an appeal from the denial can be consolidated with the underlying appeal. *See Fobian v. Storage Tech. Corp.,* 164 F.3d 887, 890 (4th Cir.1990) ("Swift denial of a Rule 60(b) motion permits an appeal from that denial to be consolidated with the underlying appeal.").

The Bankruptcy Appellate Panel has recognized this procedure in *Indian Motocycle,* 289 B.R. at 273 n. 7 ("Although it may be unusual for a trial court to consider relief from an order under Rule 60(b) while an appeal of the same order is pending, it is permissible.") (citing *Zoe Colocotroni,* 601 F.2d at 42). Moreover, the Court of Appeals has warned and stated that the procedure set forth in *Zoe Colocotroni* for a trial court to conduct further proceedings notwithstanding the pendency of an appeal should be strictly followed. *See Toscano v. Chandris, S.A.,* 934 F.2d 383, 386–87 (1st Cir.1991).

■ Clearly, under the law of *Zoe Colocotroni,* the bankruptcy court had jurisdiction to consider a Rule 60(b) motion filed during the pendency of an appeal of the December 8th orders. It is important to note, however, that at the time Eastern filed its Rule 60(b) motion, there was no pending appeal. The District Court had already issued an order affirming the December 8th Orders, and Eastern had not yet filed its notice of appeal to the Court of Appeals. Thus, this case is distinguishable from those addressing the procedure set forth in *Zoe Colocotroni.* Because the district court had already issued a ruling, Eastern was attempting to use the Rule 60(b) motion as a vehicle for avoiding the

District Court's ruling. Such an attempt is impermissible.

The First Circuit has held that an appellant "cannot try to circumvent the appellate process by bringing a motion requesting relief from an order that has already been reviewed and decided on appeal." *FDIC v. Ramirez–Rivera*, 869 F.2d 624, 627 (1st Cir.1989). As noted above, Eastern initially appealed the December 8th Orders to the District Court, asserting that the orders were based on the Debtor's false and misleading representations. The District Court duly considered Eastern's argument and then affirmed the bankruptcy court. Eastern cannot attempt to avoid the decision of the District Court through the use of a Rule 60(b) motion in the bankruptcy court, and a subsequent appeal to the Panel. *See id.* However, although we do not believe that an appeal to this Panel is appropriate, in the interests of judicial economy we will consider the merits of the appeal.

## II. Rule 60(b) Generally

Rule 60(b), which is made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 9024, provides that a party may seek relief from judgment for certain reasons, including: "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)" (Rule 60(b)(2)); "fraud ..., misrepresentation, or other misconduct of the adverse party, ..." (Rule 60(b)(3)); or "any other reason justifying relief from the operation of the judgment." (Rule 60(b)(6)). *See* Fed. R.Civ.P. 60(b)(2), (3), (6). To prevail on a Rule 60(b) motion, the movant must demonstrate: (1) timeliness, (2) exceptional circumstances justifying relief, and (3) the absence of unfair prejudice to the opposing party. *See Shepherds Hill*, 316 B.R. at 416; *Indian Motocycle*, 289 B.R. at 280.

Motions brought under Rule 60(b) are committed to the trial court's discretion, and the denial of a Rule 60(b) motion should be reviewed for abuse of discretion with "the understanding that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir.2002); *see also U.S. Steel v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 51 (1st Cir.2002) (citations omitted).

Eastern sought relief from the December 8th Orders after it discovered that the Debtor did not own the Enfield Property despite his prior representations of ownership. Eastern claims that the bankruptcy court relied upon those misrepresentations when rendering the December 8th Orders and, therefore, the bankruptcy court abused its discretion in refusing to grant relief under Rule 60(b)(2), (3) or (6).

## III. Rule 60(b)(2)—Newly discovered evidence

Rule 60(b)(2) provides that a party may seek relief from judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). The rule is "aimed at correcting erroneous judgments based on the unobtainability of evidence ..." *Hoult v. Hoult*, 57 F.3d 1, 5 (1st Cir.1995). To be unobtainable, evidence must exist at the time of trial, but be beyond reach. *See Indian Motocycle*, 289 B.R. at 280. Therefore, a party seeking relief under Rule 60(b)(2) must show that the evidence was discovered *after* the trial and that it "could not by due diligence have been discovered earlier by the movant ..." *U.S. Steel*, 315 F.3d at 51. " 'Newly discovered evidence' normally refers to 'evidence of facts in existence at the time of trial of which the aggrieved party

was *excusably ignorant.*'" *Rivera v. M/T Fossarina,* 840 F.2d 152, 156 (1st Cir.1988) (emphasis added) (citations omitted).

■ Eastern alleges that it was entitled to relief under Rule 60(b)(2) due to "newly discovered evidence" that the Debtor was not, in fact, the owner of the Enfield Lot. Although Eastern touts the deposition testimony as newly discovered evidence that the Debtor did not own the Enfield Property, Eastern fails to adequately explain why this evidence could not have been discovered before the entry of the December 8th Orders in the exercise of due diligence. The fact that Gail Ness was the title owner of the Enfield Property was a matter of public record. Therefore, with due diligence it could have been found and presented to the court earlier. *See Scutieri v. Paige,* 808 F.2d 785, 794 (11th Cir.1987) (evidence contained in public records at the time of trial cannot be considered newly discovered evidence).

Although Eastern concedes that it usually goes by record title in determining ownership of property, it claims that when confronted with a copy of the executed deed, combined with the Debtor's repeated assertions in various bankruptcy pleadings that he was the sole owner of both properties, it believed that the property had been conveyed to the Debtor. However, Eastern took no steps to ascertain whether the deed had been recorded or transferred to the Debtor. Even when the City of Methuen filed an opposition stating that the record owner of the property was Gail Ness, Eastern did not review the public records or take any other steps to ascertain whether the deed presented by the Debtor had been recorded or transferred.

■ A party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why it could not

have proffered the crucial evidence at an earlier stage of the proceedings. *See Karak,* 288 F.3d at 19–20 (citations omitted). Eastern has not met this burden because it has not adequately explained why it did not exercise due diligence in determining the ownership of the Enfield Property. Given this failing, the bankruptcy court did not abuse its wide discretion in denying relief from judgment under Rule 60(b)(2).

## IV. Rule 60(b)(3)—Fraud, misrepresentation or other misconduct

■ Alternatively, Eastern argues that the bankruptcy court should have granted relief from the December 8th Orders under Rule 60(b)(3). Rule 60(b)(3) allows a party to obtain relief from a final judgment or order where there has been "fraud ... misrepresentation, or other misconduct of an adverse party." Fed. R.Civ.P. 60(b)(3). There are two prerequisites to obtaining relief under this rule. First, the movant must demonstrate misconduct—such as fraud or misrepresentation-by clear and convincing evidence. *See Karak,* 288 F.3d at 21 (citing *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 926 (1st Cir. 1988)); *see also Tiller v. Baghdady,* 294 F.3d 277, 280 (1st Cir.2002) (same). Second, the movant must demonstrate that the alleged misrepresentations or misconduct prevented it from fully and fairly presenting its case. *See Karak,* 288 F.3d at 21 (citing *Anderson,* 862 F.2d at 924). In other words, the misconduct or fraud "must have been harmful—it must have affected [the movant's] substantial rights." *Anderson,* 862 F.2d at 924.

The First Circuit Court of Appeals has held that if the movant can successfully demonstrate that the misconduct was knowing or deliberate, there is a presumption that it prevented the movant from fully presenting its case. *See Anderson,* 862 F.2d at 923. If the movant is unable

to prove that the misconduct was knowing or deliberate, it may prevail only if it proves by a preponderance of the evidence that the misconduct substantially interfered with the full and fair preparation or presentation of the case. *Id.* Therefore, even in the face of misconduct, courts can deny relief under Rule 60(b)(3) when the party could have fully and fairly prepared and presented its case notwithstanding the misconduct. *Karak*, 288 F.3d at 21–22.

There is no dispute that from the beginning of his case, the Debtor repeatedly asserted that he owned both the Jasper Street Property and the Enfield Property when in fact he did not own the Enfield property. Eastern argues that the Debtor's misstatements were deliberate and purposefully designed to misled Eastern and the bankruptcy court, and, therefore, constitute misconduct on the Debtor's part. The Debtor asserts that he repeatedly claimed ownership of the Enfield Property because he believed that he was the true title holder of that property due to the 2004 deed. He claims that his representations were accurate as to his understanding of his rights and claims at the time they were made and, therefore, do not constitute misconduct for purposes of Rule 60(b)(3).

Eastern points to the Debtor's deposition testimony as evidence that he knew *all along* that he did not own the Enfield Property.[9] However, the Debtor also testified that he knew about the deed of the Enfield Lot, but that he did not know that the deed was being held by his attorney in escrow.[10] Therefore, the Debtor's deposition testimony only shows what the Debtor knew at the time of the deposition; it does not clearly and convincingly show that the Debtor knew all along that he did not own the Enfield Property and intentionally misrepresented pertinent facts. Since Eastern has not shown that the Debtor's alleged misstatements were knowing or deliberate, there is no presumption of harm to Eastern, and Eastern must show that the misstatements substantially interfered with the full and fair preparation or presentation of its case.

 Misconduct can have the effect of substantially interfering with the full and fair presentation of the case only when a party did not have knowledge of the alleged inaccuracies or access to information which could have resulted in this knowledge at the time of the alleged misconduct. *See Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 29 (1st Cir.1988). As noted above, Eastern, with due diligence, could have determined the true

---

9.

> Q. What happened to the property at 31 Enfield?
> A. Can I ask what you mean by what happened to it?
> Q. Sure. In May of 2001, it was owned by Gail.
> A. It was always owned by Gail.
> Q. Okay. Who owns it now?
> A. Gail LaFata.
> App. at 350.
> Q. Now, earlier today, I thought you told me that you did not currently own 31 Enfield Street.
> A. I don't.
> Q. Who owns it?
> A. Gail Ness.

App. at 360.

10.

> Q. Okay. But at some point, you became aware that Gail was going to sign a deed of 31 Enfield Street over to you?
> A. Right. But I've never got the deed in my possession.
> Q. Okay. Any idea why?
> A. Nope.
> Q. Do you have any idea whether the deed was ever sent to your attorney?
> A. Again, it's between the them three [attorneys]. I don't know what happened between all three of them.

App. at 372.

ownership of the Enfield Property prior to the issuance of the December 8th Orders. A party may not prevail on a Rule 60(b)(3) motion where he or she has access to disputed information or has knowledge of inaccuracies in an opponent's representations at the time of the alleged misconduct. *See id.; accord* 7 James Wm. Moore, *Moore's Federal Practice* ¶ 60.24[5] (2d ed. Supp.1987–88) ("Even where misrepresentations are made during a litigation, it is not an abuse of discretion to deny relief to the losing party under Rule 60(b)(3), where the party had access to accurate information."). Therefore, because Eastern could have ascertained the true ownership of the Enfield Property during the course of the bankruptcy proceedings, it was not prevented from fully presenting its case for purposes of Rule 60(b)(3). Moreover, Eastern has not explained how it would have presented its case differently had it known that the Debtor did not own the Enfield Lot. Given this failing, the bankruptcy court did not abuse its discretion in denying relief from the December 8th Orders under Rule 60(b)(3).

### V. Rule 60(b)(6)—Any other reason justifying relief

■ Finally, we consider whether Eastern presented grounds for relief under Rule 60(b)(6), a catch-all category under which a party may advance "any other reason justifying relief from the operation of the judgment." A party may only use Rule 60(b)(6) when Rule 60(b)(1)-(5) do not apply. *See Cotto v. United States,* 993 F.2d 274, 277 (1st Cir.1993) (Rule 60(6) is designed as a catch-all, and "a motion thereunder is only appropriate when none of the first five subsections pertain.... Clause (6) may not be used as a vehicle for circumventing clauses (1) through (5)"); *In*

*re Silver Spring Center,* 251 B.R. 17, 20 (Bankr.D.R.I.2000).

■ Generally, relief under Rule 60(b)(6) is reserved for "extraordinary circumstances" that justify "extraordinary" relief. *See Valley Citizens for a Safe Environment v. Aldridge,* 969 F.2d 1315, 1317 (1st Cir.1992). Courts generally find extraordinary circumstances warranting relief under Rule 60(b)(6) only where the movant was not at fault in his predicament, and was unable to take steps to prevent the judgment from which relief is sought. *See* 12 James Wm. Moore, *Moore's Federal Practice* § 60.48[3][c] (3d ed.2005) ("fault by movant usually means [a] lack of extraordinary circumstances"). As set forth above, Eastern failed to exercise due diligence to ascertain the true ownership of the Enfield Property and, therefore, its misinformation was its own fault. Thus, the bankruptcy court did not abuse its discretion in denying relief from judgment under Rule 60(b)(6).

### CONCLUSION

For the reasons set forth above, we conclude that the bankruptcy court did not abuse its discretion in denying relief from the December 8th Orders under Rule 60(b), and we **AFFIRM** the decision of the bankruptcy court.