**In re MALDEN MILLS INDUSTRIES, INC., et al, Debtors.**

Nos. 01–47214 JBR to 01–47217 JBR.

United States Bankruptcy Court, D. Massachusetts.

Jan. 22, 2007.

Christian T. Haugsby, Douglas B. Rosner, James F. Wallack, Rafael Klotz, Richard Langerman, Goulston And Storrs, PC, David J. Byer, Testa, Hurwitz & Thibeault, LLP, Guy B. Moss, Jennifer L. Stewart, Melissa G Liazos, Bingham Mccutchen, John T. Morrier, Richard E. Mikels, Ruth M Bayley, Stephen E. Cooper, Mintz Levin Cohn Ferris Golvsky & Popeo, Joshua Pemstein, Kenneth S. Leonetti, Foley Hoag LLP, Timothy A. French, Boston, MA, for Debtors.

**MEMORANDUM OF DECISION ON THE MOTIONS OF THE MALDEN MILLS CREDITOR TRUST TO VACATE ORDER GRANTING ASSENTED–TO MOTION FOR FINAL DECREE; TO REOPEN ABOVE–CAPTIONED CASES; AND TO TRANSFER VENUE OF DELAWARE CASES # 07–10048 et al.**

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for a hearing on January 12, 2007 upon the Motions of the Malden Mills Creditor Trust (1) to vacate the Court's Order of December 28, 2006 granting the "Assented-to Motion of Reorganized Debtors for Entry of Final Decree Closing All Cases" under Fed. R. Bankr.P. 9024 and Fed.R.Civ.P. 60 [Docket # 2398]; (2) to reopen the above captioned bankruptcy cases under 11 U.S.C. § 350 and Fed. R. Bankr.P. 5010 [Docket # 2399]; and (3) to transfer venue of the recently filed Delaware bankruptcy cases (# 07–10048 through # 07–10052) to Massachusetts under Fed. R. Bankr.P. 1014 [Docket # 2400]. At the conclusion of the hearing, the Court granted the Motions, gave an oral summary of its reasons, and reserved the right to issue a memorandum of decision at a later date [Docket # 2410; 2411; 2412].

### BACKGROUND FACTS:

Malden Mills Industries, Inc. (hereinafter "Debtor") and its affiliates filed a Chapter 11 bankruptcy petition on November 29, 2001 in the United States Bankruptcy Court for the District of Massachusetts (hereinafter "Court" and collectively "Massachusetts Cases").[1] The Debtor's plan of reorganization was substantially consummated, the Final Decree was entered on December 28, 2006, and the Massachusetts Cases were closed on January 9, 2007. Only fourteen hours after the Massachusetts Cases were closed, the Debtor and its affiliates filed a new Chapter 11 bankruptcy petition on January 10, 2007 in the United States Bankruptcy Court for the District of Delaware (hereinafter "Delaware Court" and collectively "Delaware Cases"). The Malden Mills Creditor Trust[2] (hereinafter "Creditor Trust"), which owns 26% of the common

---

1. The Debtor previously filed for bankruptcy in Massachusetts in the 1980s.

2. The Debtor's confirmed plan in the Massachusetts Cases established the Malden Mills Creditor Trust for the benefit of all general unsecured creditors.

stock of the Debtor and is its largest shareholder as well as a creditor, filed the instant motions seeking to vacate the Final Decree, reopen the Massachusetts Cases, and transfer venue of the Delaware Cases from the Delaware Court to this one. In summary, the Creditor Trust alleged that it was mislead into assenting to the Motion for Final Decree [Docket # 2394] not knowing that the Debtor planned to refile bankruptcy in Delaware upon the closing of the Massachusetts Cases, a plan which was known to the Debtor and its Agent, GE Capital Commerce Finance, at least as early as October/November 2006 and which was well under way by the time the Motion was filed on December 13, 2006.

*JANUARY 12, 2007 HEARING:* [3]

In its written submissions and at the hearing, lead counsel for the Creditor Trust argued that it would not have assented to the Motion for a Final Decree had it known of the Debtor's plans to immediately refile in Delaware. At the hearing, the parties focused much discussion on the circumstances surrounding the Motion. According to the Creditor Trust, the process of closing the Massachusetts Cases was moving slowly over the course of three years, from October 2003 to October 2006. 1/12/07 Transcript, p. 26. At that time, in late 2006, the Debtor's efforts intensified, as did the involvement of the Agent in the process. On a conference call in mid-to-late November 2006, a conversation which all relevant parties admit took place, co-counsel to the Creditor Trust specifically asked counsel to the Debtor in the Massachusetts Cases [4] and counsel to the Agent in a direct question whether there was any particular reason for the aggressive push to close the cases,

since it was such a significant change from the previous three years. 1/12/07 Transcript, p. 48, 50, 62. In response, Agent's counsel, by her own admission, gave an answer to the effect that "the year was coming up, everything was done, the case needed to be closed, and that people worked better with deadlines." 1/12/07 Transcript, p. 48.. With that representation, the Creditor Trust gave its assent to the Motion, which was filed with the Court on December 13, 2006. As of the November conversation, Agent's counsel knew of the Debtor's plans to refile bankruptcy, but Debtor's counsel in the Massachusetts Cases did not. However, by the time the Motion was filed, Debtor's Massachusetts counsel had been informed of the plans. 1/12/07 Transcript, p. 62, 69. He was unsure whether Creditor Trust's counsel had also been made aware of the plans. 1/12/07 Transcript, p. 70

At the hearing, lead counsel for the Debtor in the Delaware Cases argued that confidentiality was the reason why the Creditor Trust was not informed of the Debtor's plans to refile. He stated that the Debtor couldn't "bandy this about that the business is on its last legs, that the business is in jeopardy of not being able to continue to operate, and realistically hope to retain employees, realistically hope to have vendors, some of whom were on the Creditor Trust, continue to ship in the ordinary course, continue to have third parties... potentially make bids for anything more than liquidation value." 1/12/07 Transcript, p. 30. Also focusing on confidentiality, Agent's counsel stated "admittedly [her answer] was incomplete, but we were not at liberty to provide any

---

**3.** All references to the 1/12/07 Transcript are cited to the corresponding page number of Docket # 2413.

**4.** In the Massachusetts Cases, the Debtor was represented by Mintz Levin Cohn Ferris Golvsky & Popeo, LLP. In the Delaware Cases, the Debtor is represented by Kramer Levin Naftalis & Frankel LLP.

information other than what we did." 1/12/07 Transcript, p. 69. She argued that "[like the Debtor], the Agent was aware of the business risks of disclosing a potential sale or bankruptcy" and that the "Agent would have been precluded from providing that information [to the Creditor Trust] under the confidentiality provisions of [its] creditor agreement." 1/12/07 Transcript, p. 47. Agent's counsel stated that it "couldn't have happened any other way." *Id.* Creditor Trust's counsel countered by pointing out that the Creditor Trust had, in the past, been "led to believe... that it would be kept in the loop with respect to major corporate transactional events" and assured that "nothing this significant would go on without the Creditor Trust's knowledge." 1/12/07 Transcript, p. 53. He argued that the Debtor and Agent's arguments were "squarely contradicted by previous transactions," focusing on one in particular in early 2006 in which the Creditor Trust actively participated in the sale discussions. 1/2/07 Transcript, p. 54. He stated "If [the Debtor and Agent] made a determination...that for this transaction...they needed to keep the Creditor Trust in the dark under some false sense of fiduciary duty, it was incumbent upon them to proceed with that motion for final decree without trying to elicit our assent on false pretenses." *Id.* If they determined that they couldn't share the information with the Creditor Trust, "they never should have drawn us into the process...and have us assent." 1/12/07 Transcript, p. 55. The Court agrees.

As to the Motion to Transfer Venue, Creditor Trust's counsel argued that venue was more appropriate in Massachusetts than in Delaware in the interests of justice and for the convenience of the parties. The Debtors are Malden Mills and certain affiliates. They have been based in Massachusetts for 101 years, established in New England in 1906, and to quote just one phrase from the disclosure statement... "the company has throughout its history been committed to its New England base"...The Debtor... has never had any meaningful operations in Delaware. Then there are other constituencies...including the Debtor's current and former employees, the vast majority of which reside in Massachusetts or perhaps southern New Hampshire ...These...workers whose fate may be significantly impacted by this bankruptcy have a right to have the case heard in... their home jurisdiction, where it's visible to them, covered by the local press, monitored by their elected representatives, and where the proceedings are accessible to them....The same result follows if you look at the Debtor's management, obviously all based in the New England area, what's the value of having them fly back and forth...The Debtor's corporate counsel, Bingham McCutchen, based out of Boston....The proposed stalking horse bidder...Gordon Brothers, well known in this neck of the woods, another prominent local institution.... Let's look at the creditor body...it's many of the same players who were active in the cases here. The largest creditor is the Gurltiz entity...the next largest creditor... Aaron Feuerstein... lives in Brookline, Massachusetts...the next listed creditor is... the City of Methuen... Massachusetts....Caterpillar, Inc, care of Holland & Knight in Boston, ...National Grid...Woburn, Massachusetts,...The Crosby Group, Ipswich, Massachusetts; AV Sportswear, Inc., Lynn, Massachusetts ...Advanced Computer Services Inc., Westford Massachusetts, ....I didn't see any creditors...based in... Delaware or nearby...none of these players—the Debtor,

its lead counsel, its creditors, and the other major parties in interest have...any meaningful connection... to Delaware, other than the Debtor having been incorporated there after the plan was confirmed here...that is dwarfed in significance by all the other factors... 1/12/07 Transcript, p. 13–16.

Debtor's Delaware counsel did not specifically deal with the factors, but argued that venue was proper in Delaware, that it was a business decision to file there, and that it was a "central and convenient forum for [potential bidders]." 1/12/07 Transcript, p. 27, 42–43. He argued that "[the Delaware filing] was not an attempt to revisit the old bankruptcy...and separate and apart from that, [the Debtor was] dealing with a business problem." 1/12/07 Transcript, p. 30.. "The [purchase and sale] agreement...made clear...that they were only willing to...[buy the company]...under a Section 363 transaction so that the assets could be sold free and clear...it was the judgment, not only of my firm, but of all the parties who were involved, that given the nature of the transaction,... it would best be facilitate[d] ... if the case was filed in Delaware...The goal was not to convey the impression that anybody on the [Debtor's] side was seeking to reopen the [Massachusetts] bankruptcy." 1/12/07 Transcript, p. 31–32. He argued that the Delaware bankruptcy proceeding was "intended to be very quick" and to not be "burdened by the legacies of the prior [cases]." 1/12/07 Transcript, p. 35. He stated that "...this hearing is the best example of what we were hoping to avoid. This is an expensive hearing. This is a distracting hearing." *Id.*

It is also worth noting that Debtor's Delaware counsel claimed that "the first he heard of [the January 9, 2007 closing of the Massachusetts Cases] was when [he] saw it in the papers." 1/12/07 Transcript, p. 39. He claimed that it "was not some-thing that we knew of or were aware of." He claimed it was "a coincidence," although he could "appreciate" that given the time sequence with the Delaware filing occurring only fourteen hours later, "it did raise questions." 1/12/07 Transcript, p. 40.

*DISCUSSION:*

### 1. *Motions to Vacate Final Decree and Reopen Massachusetts Cases*

The Creditor Trust filed two Motions, one seeking to vacate the Final Decree and one seeking to reopen the Massachusetts Cases, both of which were granted at the January 12, 2007 hearing. The Motions sought the same result—a finding that the Massachusetts Cases are still "pending" whether it's because they were never closed (i.e. the final decree having been vacated) and/or because they have since been reopened—using alternative theories under the Code. For this reason, and because both theories raise equitable concerns, the Court has consolidated its discussion on these two motions as set forth below.

### A. *Section 350(b)*

▮ Fed. R. Bankr.P. 3022 is applicable in chapter 11 cases. It provides that "after an estate is full administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr.P. 3022. Here, the Debtor filed the motion seeking a final decree, to which the Creditor Trust and the Agent assented. The Court entered the final decree on December 28, 2006. However, "a final decree closing the case after the estate is fully administered...does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code." 1991 Advisory Committee Note to Fed. R. Bankr.P. 3022. Section 350(b) provides that "a case may

be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or *for other cause."* 11 U.S.C. § 350(b) (emphasis added). Rule 5010 provides that "a case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr.P. 5010. Here, the Creditor Trust, a party in interest as a creditor and shareholder of the Debtor, filed such a motion seeking to reopen the case for other cause.[5] It is well settled that the decision to reopen a case is within the sound discretion of the bankruptcy court. *In re Crocker,* 362 B.R. 49, 53, 2007 WL 93223, *2 (1st Cir. BAP 2007) (citing *In re McGuire,* 299 B.R. 53, 55 (Bankr.D.R.I.2003)). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings." *Id.* (citing *In re Case,* 937 F.2d 1014, 1018 (5th Cir.1991)). The Code does not define "other cause," but bankruptcy courts may consider equitable factors in determining whether such exists. *Id.*

### B. Rule 60(b)

▮ Rule 60 is applicable to bankruptcy cases through Rule 9024. A Rule 60(b) motion has been used in bankruptcy cases to revoke a final decree closing a case. *See Woods v. Kenan (In re Woods),* 173 F.3d 770 (10th Cir.1999), *cert. denied,* 528 U.S. 878, 120 S.Ct. 187, 145 L.Ed.2d 157 (1999). A case need not be reopened before filing a Rule 60(b) motion, so this approach can be the functional equivalent to a motion to reopen under Section 350(b) and Rule 5010 under certain circumstances. 9 *Collier on Bankruptcy at* ¶ 5010.02[7] (15th ed.2006) (citing 1983 Advisory Committee Note to Fed. R.

Bankr.P. 5010). Rule 60(b) lists six categories on which a party may seek relief from a final judgment, order, or proceeding. The Creditor Trust asserts that two are relevant here: 60(b)(3) "fraud . . ., misrepresentation, or other misconduct of the adverse party" or 60(b)(6) "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(3), (6).

▮ At the threshold, the Court finds that Rule 60(b)(6) does not apply. To obtain relief under Rule 60(b)(6), there must be "exceptional" circumstances that justify "extraordinary" relief. *Simon v. Navon,* 116 F.3d 1, 5 (1st Cir.1997) (citing *Valley Citizens for a Safe Environment v. Aldridge,* 969 F.2d 1315, 1317 (1st Cir. 1992)). Rule 60(b)(6) is designed as a catch-all provision and a motion thereunder "is only appropriate when none of the first five subsections pertain." *Id.* (citing *Cotto v. United States,* 993 F.2d 274, 278 (1st Cir.1993)). "In the case at bar, nothing has been suggested or even insinuated that takes this case beyond allegations of garden variety deceit and fraud by a party" and therefore Rule 60(b)(6) is not available under these circumstances where Rule 60(b)(3) is the more appropriate avenue for vacating the Final Decree. *Id.*

▮ To obtain relief under Rule 60(b)(3), there are two prerequisites. *In re Lafata,* 344 B.R. 715, 724 (1st Cir. BAP2006). First, the movant must demonstrate misconduct-such as fraud or misrepresentation-by clear and convincing evidence. *U.S. Steel v. M. DeMatteo Const. Co.,* 315 F.3d 43, 53 (1st Cir.2002); *Karak v. Bursaw Oil Corp.,* 288 F.3d 15, 21 (1st Cir.2002) (citing *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 926 (1st Cir.1988)).

---

**5.** The court can reopen a case *sua sponte.* *See 3 Collier on Bankruptcy at* ¶ 350.03[8] (15th ed.2006). As the Court mentioned in its oral decision on January 12, 2007, even be-fore receiving the Creditor Trust's Motions, the Court considered a *sua sponte* show cause order to reopen the Massachusetts Cases. 1/12/07 Transcript, p. 72.

Second, the movant must demonstrate that the alleged misrepresentations or misconduct prevented it from fully and fairly presenting its case. *Lafata*, 344 B.R. at 724 (citations omitted). In the First Circuit, if the misconduct was knowing or deliberate, there is a presumption that it prevented the movant from fully presenting its case. *Id.* (citing *Anderson*, 862 F.2d at 923). Courts have sustained Rule 60(b)(3) motions on grounds of misconduct in cases where the party's actions did not necessarily rise to the level of fraud and where the party's actions were related to filing a motion or obtaining an order. *See In re Wayne Manor, Inc.*, 117 B.R. 12, 14 (D.Mass.1990) (finding misconduct under Rule 60(b)(3) where plaintiff was guilty of "something approaching deceit" in concealing its knowledge, that it had well before its motion was filed, that the amount it was claiming was incorrect); *In re Duro Industries, Inc.*, 293 B.R. 271, 280 (1st Cir. BAP2003) (vacating order under Rule 60(b)(3) where financing order was obtained under "if not false pretenses, at least a misunderstanding as to the scope of the... marketing efforts to which [the parties] had in effect committed themselves").

### C. Analysis

The actions of the Debtor and the Agent, particularly their lack of candor to the Creditor Trust in soliciting its assent to the Motion, are sufficient to reopen the Massachusetts Cases for "other cause" under Section 350(b) and to vacate the Final Decree for "other misconduct" under Rule 60(b)(3). It is critical that the Debtor and the Agent sought the Creditor Trust's assent to the Motion and did so under false pretenses. The parties were not prevented from seeking the Final Decree without the Creditor Trust's consent nor did they need its consent or the Court's to file a second bankruptcy proceeding in Delaware. The Court understands that a sec-

ond Chapter 11 bankruptcy filing is often necessary and appropriate. Rarely, however, does the timing and factual content demonstrate a lack of candor to a key constituency as the conduct does here. The parties' duty of confidentiality, although perhaps sincere, did not prevent them from telling the Creditor Trust that there were other reasons for the aggressive push to close the Massachusetts Cases, even if they weren't at liberty to specifically discuss them. The Debtor and the Agent clearly instigated the process of obtaining the Final Decree with the obvious intent of filing elsewhere. The January 10, 2007 filing was more than a mere coincidence; there was clearly the intention to file the Delaware Cases the instant the Massachusetts ones were closed. The Debtor and Agent's unnecessary lack of candor was designed to expedite the closing process and to facilitate the Delaware filing in an attempt to gain some tactical advantage on the inevitable venue transfer motion. The Court finds that by seeking the Creditor Trust's assent with knowledge of the tactical shift to Delaware on the venue transfer motion and by offering a misleading, or at least an incomplete, explanation in response to a direct question, the Debtor and Agent demonstrated a serious breach of the duty of candor, which the Court cannot condone. *See, e.g., A.B.A. Model Rules of Professional Conduct*, Rule 4.1(a) (prohibiting false statements to third persons); 8.4(c) (containing general prohibition against conduct involving dishonesty, fraud, deceit, or misrepresentation); *Massachusetts Rules of Professional Conduct*, Rule 4.1(a) (same); Rule 8.4(c) (same); *New York Lawyer's Code of Professional Responsibility*, DR 1-102(a)(4) (same as A.B.A. and MA 8.4(c)); Canon 22 of *A.B.A. Canons of Professional Ethics, superseded by A.B.A. Model Rules of Professional Conduct* (stating that "the

conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness"). Even if not outright fraud, this clearly rises to the level of "something approaching deceit" and warrants reopening the Massachusetts Cases and vacating the Final Decree. *Accord Wayne Manor*, 117 B.R. at 14. Had the parties not solicited the Creditor Trust's assent to the Motion and not offered an intentionally misleading answer in the process, the outcome of the Court's decision on this issue would have been different.

### 2. *Motion to Transfer Venue of Delaware Cases to Massachusetts*

■ Anticipating the Court's decision to vacate the Final Decree and reopen the Massachusetts Cases, the Creditor Trust also filed a motion to transfer venue of the Delaware Cases from the Delaware Court to this one pursuant to Rule 1014(b). Rule 1014(b) provides:

> If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

At the onset, the Court notes that a bankruptcy case is "pending" within Rule 1014(b) until the final decree is entered and the case is closed under Section 350(a). *See In re Emerson Radio Corp.*, 52 F.3d 50, 54 (3rd Cir.1995) (citations omitted). Having vacated the Final Decree under Rule 60(b)(3) and reopened the Massachusetts Cases under Section 350(b), these bankruptcy proceedings are "pending" within the meaning of Rule 1014(b). Therefore, the Creditor Trust's motion is properly before this Court as the Massachusetts Cases, filed in November 2001, are the "petition filed first" as they predate the Delaware Cases by more than five years.

■ The decision to grant a venue transfer under Rule 1014(b) rests with the sound discretion of the court and the determination turns on the particular facts of each case. *See In re Desmond*, 2005 WL 1244842, *1 (Bankr.D.N.H.2005); *In re Raytech Corp.*, 222 B.R. 19, 25 (Bankr. D.Conn.1998) (citations omitted). The movant must show that a venue transfer is warranted by a preponderance of the evidence. *Desmond*, 2005 WL 1244842 at *1 (citations omitted). The "interest of justice" or "convenience of the parties" test under Rule 1014(b) is identical to the test for transferring venue under 28 U.S.C. § 1412 and there are six factors which the court should consider. *See Raytech Corp.*, 222 B.R. at 25. They are:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the bankruptcy (debtor) to the Court;

(3) The proximity of witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate; and

(6) The necessity for ancillary administration if bankruptcy should result.

*In re Desmond,* 2005 WL 1244842 at *2 (citing *In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980)). In addition, the court should consider any local interests which favor having the controversy decided at home. *In re Slentz,* 94 B.R. 446, 449 (Bankr.N.D.Ohio 1988) (citations omitted). Of these, the most important factor is whether the venue transfer would promote the economic and efficient administration of the estate. *Commonwealth Oil,* 596 F.2d at 1247.

 Applying the above factors to the instant case, the Court notes that the Creditor Trust's argument that the Debtor's contacts with Delaware are minimal was undisputed at the hearing. *Accord In re Raytech Corp.,* 222 B.R. 19, 26 (Bankr. D.Conn.1998). Other than the Debtor being incorporated there and the presumed "stalking horse" bidder, Gordon Brothers, wanting the case filed there, there is no other apparent connection to Delaware, or if there is, it wasn't conveyed to the Court at the hearing.[6] Debtor's counsel made no attempt to deal with the traditional factors in contrast to counsel for the Creditor Trust who discussed them at length. The Debtor's contacts with Massachusetts are substantial, more so than any other place in the World. The Debtor's operations are here; its assets are here; its current and former employees are here; and its management is here. Many of its creditors (measured in both numbers of creditors and the amounts owed to them) are here too, notably from the list of the 30 largest unsecured creditors, Aaron Feuerstein,

City of Methuen, Caterpillar Inc., National Grid, The Crosby Group, AV Sportswear Inc., Advanced Computer Services, Inc., and Foster–Miller, Inc. Two other creditors in the top 30 are located in New England, Nail Communications, Inc. in Rhode Island and Mdp Realty Associates LLC in New Hampshire. Of the 30 largest unsecured creditors, none are located in Delaware. The Creditor Trust, which owns 26% of the common stock of the Debtor and is a creditor, is here. Even Gordon Brothers, the proposed stalking horse bidder, is here although not necessarily a party in interest.[7] Clearly, the Debtor's venue selection was not based on the convenience of these constituencies given their geographical connection to Massachusetts, and one might even surmise that it was designed to make the venue *inconvenient* and expensive for some, a fact strongly implied by Debtor's counsel both in this Court and before Judge Kevin Gross in Delaware.

This Court is very familiar with the facts and litigants, having presided over the Debtor's previous reorganization in Massachusetts, a point emphasized by several attorneys at the hearing. *Accord Consolidated Equity Properties,* 136 B.R. at 267 (D.Nev.1991) (transferring venue to Nevada under Rule 1014(b) where the court's familiarity with the facts was unparalleled in Texas). This Court is well versed on the terms of the Debtor's confirmed plan and other documents, such as the Debtor's lease with Caterpillar, should the need arise to interpret them, which some parties expect will occur. The Court is aware of the Debtor's extreme plight[8] and like the

---

6. The Court also notes that no evidentiary hearing was requested.

7. For purposes of the "convenience of the parties" test under Rule 1014(b), the parties are considered to be the debtor, its creditors, and witnesses. *In re Consolidated Equity*

*Properties, Inc.,* 136 B.R. 261, 267 (D.Nev. 1991) (citing *Solomon v. Continental Am. Life Ins. Co.,* 472 F.2d 1043, 1047 (3rd Cir.1973)).

8. *See* "Order Denying the Motion to Enforce the Automatic Stay" entered in the Delaware Cases [# 07–10048, docket # 55, dated

Delaware Court, is capable of facilitating, if appropriate, the "quick" Section 363 sale that the Debtor contemplates. However, the Debtor chose the time of filing, not apparently based on its economic situation and the needs of all constituencies, but to facilitate venue selection, possibly to the detriment of the estate.

Based on these overwhelming contacts and the record made at the hearing, the Court is confident that had this same motion been before the Delaware Court, the result would have been the same.

1/11/07] (stating "time is of the essence, assets are limited, and Debtors do not have the luxury of time or money to wage protracted litigation").