FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

September 2, 2015

Blaine F. Bates
Clerk

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

|  |  |
|---|---|
| IN RE GALEN LEMAR AMERSON, officer, director, shareholder BOS, Inc., member See the Signs, LLC, and FRANCES MOORER SCOTT, officer, director, shareholder BOS, Inc., member Experiential Learning Tools, LLC, member TWP LLC, former member See the Signs, LLC, member Clear & Free, LLC, member GAPPE, LLC,<br><br>Debtors. | BAP No. CO-14-045 |
| GALEN LEMAR AMERSON and FRANCES MOORER SCOTT,<br><br>Appellants,<br><br>v.<br><br>DENNIS W. KING, Chapter 7 Trustee, BETTY QUINN MOORER, SEALE E. MOORER, JR., and TAMARA D. MOORER,<br><br>Appellees. | Bankr. No. 12-17345<br>Chapter 7<br><br>OPINION* |

Before CORNISH, NUGENT, and SOMERS, Bankruptcy Judges.

CORNISH, Bankruptcy Judge.

The debtors appeal the bankruptcy court's order and judgment granting the

Chapter 7 trustee's motion to approve a settlement agreement. The settlement

---

\* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

agreement relates to one of the debtors' interests under her deceased father's estate plan and a probate contest thereof. That debtor's father died two months before the debtors filed their Chapter 7 petition, but debtors did not disclose any potential inheritance in their bankruptcy filings or to the trustee. On appeal, the debtors argue any property interest they have as a result of decedent's death is not property of the estate. The debtors further argue that the bankruptcy court's order approving the settlement should be reversed because the settlement payment to the bankruptcy estate was too low, and therefore, somehow violates their civil and constitutional rights. Having reviewed the record and applicable law, we affirm the bankruptcy court's order.

## I.      BACKGROUND[1]

Galen Lemar Amerson and Frances Moorer Scott (collectively "Debtors," individually "Amerson" or "Scott") filed their Chapter 7 petition in April 2012. About two months prior to seeking bankruptcy protection, Scott's father, Seale A. Moorer, Sr. ("Decedent"), died leaving a last will and testament dated January 9, 2012. The will was a "pour-over will" that transferred any assets Decedent held outside of trust to a revocable or living trust that was created simultaneously with the will (for simplicity, the will and trust will be collectively referred to as the "2012 Will").[2] Decedent created the revocable trust to avoid probate of his assets, and the 2012 Will purportedly superseded a will Decedent executed in 1983 ("1983 Will," and together with the 2012 Will, the "Wills").

Under the provisions of both the 2012 Will and the 1983 Will, at Decedent's death, his assets were to be placed in a trust created primarily for the

---

[1]      Unless otherwise indicated, this factual description is taken from the bankruptcy court's *Order Granting Trustee's Motion to Approve Settlement ("Order Approving Settlement"), in* Appellants' Amended App. at 40.

[2]      We realize that in some circumstances revocable trusts and wills are treated differently for bankruptcy purposes, but here the difference in form does not change the analysis.

benefit of Scott's mother, but Scott was given an interest in the remainder of the trust principal if she survived her mother.[3] The primary changes made to Decedent's 1983 estate planning scheme by the 2012 Will were ostensibly to take advantage of changes in estate tax law. Debtors did not schedule any interest related to Decedent's death on their Schedule B, notwithstanding that the 2012 Will had been submitted for probate in Florida in February 2012, and Scott acknowledged receipt of the notice of administration in March 2012.

At the meeting of creditors in May 2012, Dennis King, the Chapter 7 trustee ("Trustee"), questioned Debtors regarding the existence of any possible inheritances, but Debtors did not disclose Decedent's recent death or any possible interest in his estate. Trustee also informed Debtors that "If you find you're going to inherit money, win the lottery, someone leaves you life insurance in the next six months, you need to let me know."[4] Scott acknowledged she understood this obligation.

While Debtors' Chapter 7 case was pending, Scott and her half-sister, Martha Moorer Wise ("Wise"), filed suit in Florida (the "Probate Contest") against her mother, brother, and sister-in-law (the "Probate Defendants"). Scott contested the 2012 Will on the basis that Decedent lacked testamentary capacity and was subject to undue influence,[5] and sought to reinstate the 1983 Will, or to

---

[3]     Scott's mother was to receive all income from the trust and, if necessary, the trust principal could be distributed for her health, maintenance, and support. The best explanation of the trusts created under the Wills is contained in a letter from the attorney who drafted the 2012 estate planning documents to the Florida Bar Attorney Consumer Assistance Program after Scott filed a complaint against him ("Bar Complaint Response"). *See Letter from F. Edward Johnson to Francisco-Javier P. Digon-Greer (Apr. 5, 2012), in* Appellee's App. at 74.

[4]     *Order Approving Settlement* at 3, *in* Appellants' Amended App. at 42.

[5]     Technically, Scott filed a "Counter Petition for Administration and Petition for revocation of Probate of Will Dated January 9, 2012" in the probate proceedings, together with a regular civil "Complaint for Revocation of Trust dated January 9, 2012." *See Trustee's Motion to Approve Settlement of Adversary*

(continued...)

have Decedent's estate pass by intestacy. Two provisions in the 2012 Will that were not in the 1983 Will likely motivated Scott to file the Probate Contest. First, the 2012 Will gave Scott's mother a limited or special power of appointment over the trust principal, which effectively gave her the right to disinherit Scott by executing the power.[6] And second, instead of distributing Scott's share to her outright upon her mother's death, the 2012 Will left Scott's share in a spendthrift trust for her benefit.[7] Scott did not notify Trustee that she had filed the Probate Contest in June 2012, only a month after the meeting of creditors.

The bankruptcy court granted Debtors a discharge in August 2012. Trustee then filed a no-asset report in October 2012, and the case was closed in December 2012. About a week later, Scott filed a pro se Chapter 13 case. Again, Scott did not initially disclose her interest under Decedent's 2012 or 1983 Wills or the Probate Contest she filed. However, in February 2013, Scott amended her Chapter 13 Schedule B to reflect the Probate Contest, but valued it as Unknown/$0. On motion by the Chapter 13 trustee, Scott's Chapter 13 case was dismissed for bad faith and closed in April 2013.

Meanwhile, in December 2012, Debtors filed a motion to reopen their Chapter 7 case to amend their Schedule B to disclose a claim for wrongful foreclosure against their mortgage lender.[8] In March 2013, Debtors finally

---

[5]    (...continued)
*Probate Proceeding and Civil Action Concerning the January 9, 2012 Will and Trust of Seale A. Moorer, Sr. ("Motion to Approve")* ¶ 8, at 2, *in* Appellants' Amended App. at 52.

[6]    *See Letter from Douglas W. Brown to Dennis W. King, Trustee (Sept. 27, 2013)* at 3-4, *in* Appellee's App. at 56-57.

[7]    *See Letter from F. Edward Johnson to Francisco-Javier P. Digon-Greer (Apr. 5, 2012)* at 4, *in* Appellee's App. at 77.

[8]    *See Amended Debtors Motion to Reopen Bankruptcy Case, in* Appellants'
(continued...)

-4-

amended their Chapter 7 Statement of Financial Affairs and Schedule B to include the Probate Contest, but claimed the value was unknown or $0.00.[9] Debtors then directly informed Trustee about the possible inheritance and the Probate Contest by letter dated April 5, 2013.[10] The bankruptcy court subsequently reopened the Chapter 7 case, Trustee was reappointed, and he withdrew his no-asset report. Debtors filed a second amended Schedule B that did not include the Probate Contest, but then filed a third amended Schedule B in November 2013 that again listed the Probate Contest with a value of zero.

After the Probate Defendants' Florida counsel learned of Scott's Chapter 7 case, he retained local Colorado counsel to engage in settlement discussions with Trustee.[11] Trustee then retained local counsel in Florida and reached a proposed settlement with the Probate Defendants. On February 4, 2014, Trustee filed a motion to approve the settlement in the bankruptcy court ("Motion to Approve").[12] Pursuant to the Settlement Agreement, the estate was to receive $100,000, plus up to $6,000 to pay Trustee's fees and expenses related to obtaining approval of the settlement from the bankruptcy court.[13] In his Motion

---

[8]     (...continued)
Amended App. at 31.

[9]     *See Amended Schedule B, in* Appellants' Amended App. at 35; *Amended Statement of Financial Affairs, in* Appellants' Amended App. at 36.

[10]     *Letter from Galen LeMar Amerson and Frances Moorer Scott to Dennis W. King, Trustee (Apr. 5, 2013), in* Appellee's App. at 215.

[11]     *Transcript of Evidentiary Hearing on Trustee's Motion to Approve Settlement and Debtors' Objection Thereto held on June 10, 2014 ("Transcript")* at 19, *in* Appellants' Amended App. at 320.

[12]     *Motion to Approve, in* Appellants' Amended App. at 51. A settlement of the Probate Contest was reached by way of court ordered mediation, and the agreement was eventually approved by the Florida probate court. The Probate Defendants reached the same settlement with Scott's half-sister Wise.

[13]     As noted in the Order Approving Settlement Agreement, the settlement amount was increased from $75,000 to $100,000 after the filing of the Motion to

(continued...)

-5-

to Approve, Trustee argued the litigation would be complicated, expensive, and time consuming, and that the estate was not likely to succeed on the merits of the claim. Further, Trustee represented the Settlement Agreement was the product of an arms-length negotiation between the parties that took into account the disputed factual and legal issues, as well as the time value of the bankruptcy estate's claims.

Debtors, acting pro se, responded to Trustee's Motion to Approve with a motion opposing the Settlement Agreement as "UNAUTHORIZED and VOID."[14] With mediation of the Probate Contest scheduled for February 13, 2014 in Florida, Debtors asked the bankruptcy court to hold an emergency hearing on their motion. They sought to have the bankruptcy court require the Trustee to abandon the estate's interest in the Probate Contest because Trustee had "no authority to squander . . . possible future assets in a compromise for a small fraction of [Scott's] inheritance for the convenience of and in exchange for enticements, compensation and/or in response to intimidation by the respondents."[15] The bankruptcy court immediately entered an order denying Debtors' request for emergency hearing, determining that any right Scott had to an inheritance was property of the bankruptcy estate, and advising that it would set a hearing on Trustee's Motion to Approve in due course.[16]

---

[13]    (...continued)
Approve. The full agreement is contained in the Mediated Settlement Agreement. Appellee's App. at 41.

[14]    *Debtors Affidavit Opposing Unauthorized and Therefore Void Settlement Offer in Seale A. Moorer Sr.'s Probate Estate Case & Motion for Emergency Hearing/Consideration by Court & Motion to Abandon the Probate Estate Case* ¶ 34, at 6, *in* Appellants' Amended App. at 67.

[15]    *Id.* ¶ 13, at 11-12, *in* Appellants' Amended App. at 72-73.

[16]    *Order on Debtors' Motion for Emergency Hearing, in* Appellee's App. at 24.

Debtors then retained counsel and filed an objection to Trustee's Motion to Approve.[17] Notwithstanding their probate-claim valuation of zero on Schedule B, the main thrust of Debtors' objection was that Trustee's proposed compromise for $75,000 was "preposterous" and "ridiculously low," because the actual value of the Probate Contest was "about 3.1 million dollars (the remainder interest in a trust) of which . . . Scott has a one-third interest."[18]

In June 2014, the bankruptcy court held an evidentiary hearing on Trustee's Motion to Approve. Debtors did not appear at the hearing to testify in support of their objection, but the bankruptcy court heard the testimony of three witnesses: 1) Trustee, 2) Scott's former attorney in the Probate Contest, and 3) the Probate Defendants' counsel in the Probate Contest. After hearing the testimony of the witnesses and taking evidence, the bankruptcy court concluded continuing litigation in the Probate Contest would be complex and expensive, and that probable success on the merits was low. Therefore, the bankruptcy court entered its order granting Trustee's Motion to Approve ("Order Approving Settlement") on July 24, 2014. On August 6, 2014, Debtors filed a motion to extend time to appeal, which the bankruptcy court granted, extending the deadline until September 1, 2014. Debtors timely filed their notice of appeal to this Court on August 29, 2014.[19]

---

[17] *Objection to Trustee's Motion to Approve Settlement Agreement, in* Appellee's App. at 241.

[18] *Id.* at 1-2, *in* Appellee's App. at 241-42.

[19] Trustee King is the only appellee to file a brief or appendix and to appear at oral argument.

## II.    APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[20] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado.  The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[21]  Here, the bankruptcy court's Order Approving Settlement of Scott's interest in the Probate Contest is final for purposes of review.[22]

## III.    STANDARD OF REVIEW

For purposes of standard of review, decisions by trial courts are traditionally divided into three categories, denominated:  1) questions of law, which are reviewable *de novo*; 2) questions of fact, which are reviewable for clear error; and 3) matters of discretion, which are reviewable for abuse of discretion.[23] The first issue raised on appeal by Debtors is whether Scott's interest under Decedent's Wills or in the Probate Contest is property of the estate.  Whether an

---

[20]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8001(e) (*now at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001–3 (*now at* 10th Cir. BAP L.R. 8005-1, effective Dec. 1, 2014).

[21]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[22]    *In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (a bankruptcy court order approving a settlement that brings litigation between the parties to an end is a final order).

[23]    *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

asset is property of the estate is a legal question subject to *de novo* review.[24]  *De novo* review requires an independent determination of the issues, giving no special weight to the trial court's decision.[25]  The second issue on appeal is whether the bankruptcy court erred in granting Trustee's Motion to Approve the Settlement Agreement.  We review a bankruptcy court's approval or disapproval of a proposed settlement for abuse of discretion.[26]  "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[27]

## IV.   ANALYSIS

### A.   Property of the Estate

On appeal, Debtors argue any inheritance due under Decedent's Wills and any interest in the Probate Contest is not property of the estate.  Trustee asserts Debtors did not raise this issue in their objection to the Motion to Approve, in their pretrial statement, or at trial.  As a result, Trustee argues Debtors have waived this issue and may not argue it on appeal.[28]  But we are not convinced Debtors should be barred from seeking appellate review of this issue.  While it is true the bankruptcy court did not rule on the issue in its Order Approving Settlement, it did so previously in its order denying the motion Debtors filed

---

[24]    *In re Wise*, 346 F.3d 1239, 1241 (10th Cir. 2003).

[25]    *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[26]    *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989) (A bankruptcy court's approval of a settlement "may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion."); *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997) (approval of settlement reversible only when it amounts to clear abuse of discretion).

[27]    *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[28]    *Brief of Appellee Dennis W. King, Chapter 7 Trustee ("Response Brief")* at 13.

opposing the Settlement Agreement and requesting an emergency hearing. In that order, the bankruptcy court clearly ruled the interests were property of the estate,[29] and because such determination is a legal one, there would have been no need for testimony or evidence at the subsequent hearing on Trustee's Motion to Approve. Therefore, we will review the bankruptcy court's determination that Scott's interests deriving from Decedent's death are property of the estate.[30]

Section 541(a) of the Bankruptcy Code is very broad in nature and includes in the bankruptcy estate all kinds of property, legal and equitable, tangible or intangible. "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."[31] Additionally, "the mere opportunity to receive an economic benefit in the future is property with value under the [Bankruptcy] Code."[32] The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held that "[e]very conceivable interest of the debtor, future,

---

[29]     *Order on Debtors' Motion for Emergency Hearing* at 1, *in* Appellee's App. at 24.

[30]     In support of his waiver argument, Trustee points only to *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720-21 (10th Cir. 1993), for the proposition that issues not raised at trial cannot be considered on appeal absent unusual circumstances. *See* Response Brief at 13. But as explained above, such authority is not entirely applicable here because the bankruptcy court addressed the issue in a prior order. *See Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 739 (10th Cir. 2015) (raising issue and seeking a ruling required to preserve argument for appellate review). Additionally, because Trustee's Motion to Approve was still pending when the order denying Debtors' motion was entered, the bankruptcy court's ruling may not have been a final appealable order. Further, the bankruptcy court's determination regarding property of the estate in this case is a legal one, and to the extent it may be viewed as in the nature of a partial summary judgment, it would likely be one that is appealable following final judgment. *See Stewart v. Beach*, 701 F.3d 1322, 1328-29 (10th Cir. 2012); *Copar Pumice Co. v. Morris*, 639 F.3d 1025, 1031 (10th Cir. 2011); *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006).

[31]     *Segal v. Rochelle*, 382 U.S. 375, 379 (1966) (internal quotation marks omitted) (interpreting term "property" under section 70a(5) of the Bankruptcy Act).

[32]     *In re Majestic Star Casino, LLC*, 716 F.3d 736, 750-51 (3d Cir. 2013) (internal quotation marks omitted).

-10-

nonpossessory, contingent, speculative, and derivative, is within reach of 11 U.S.C. § 541."[33]

Scott acquired any interests she holds under the Wills or in the Probate Contest thereof at the time of Decedent's death.[34] Decedent died two months before Debtors filed their Chapter 7 petition, and therefore the interests are within the reach of § 541. Debtors believe that because they did not actually receive any distributions prepetition, or within the six month period following the petition date,[35] that Scott's interest is not included in the bankruptcy estate. But the fact that actual enjoyment of her property interests is postponed until some time in the future, or is subject to contingencies, does not change the result under § 541. As the Tenth Circuit has explained, "[E]ven contingent interests that may or may not vest for years at the time of their creation are not necessarily excluded."[36] Postponed enjoyment and contingencies affect the value of the property interest; they do not prevent the property from being included in the estate.[37] Therefore, absent any exceptions, Scott's interests under Decedent's Wills or in the Probate Contest thereof are property of the bankruptcy estate.

At oral argument, counsel for Debtors asserted any inheritance interest due Scott is excluded from the estate pursuant to the exception stated in § 541(c)(2)

---

[33] *In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).

[34] *See* Fla. Stat. Ann. § 732.514 (West 2002) (devises vest at testator's death unless the will provides that some other event must happen before a devise vests).

[35] Debtors also misinterpret § 541(a)(5)(A), which includes in the bankruptcy estate a bequest, devise, or inheritance that a debtor becomes entitled to within 180 days after the petition is filed. Again, it is the date upon which a debtor becomes vested in such interest, and not actual receipt of the property, that causes inclusion of this type of interest in the estate, notwithstanding that it has been acquired post-petition.

[36] *See In re Dittmar*, 618 F.3d at 1207 (citing *In re Yeary*, 55 F.3d 504, 505, 508-09 (10th Cir. 1995)).

[37] *In re Knight*, 164 B.R. 372, 375 (Bankr. S.D. Fla. 1994) (citing *In re Newman*, 88 B.R. 191, 192 (Bankr. C.D. Ill. 1987)).

because the trust terms under the 2012 Will contain a spendthrift trust provision recognized by Florida law. We strongly disagree. While it is true that we apply Florida law here to determine property interests under the Wills,[38] and that it recognizes spendthrift trust provisions,[39] there are numerous problems with this argument.

First, in order to preserve an argument for appellate review, a litigant must raise an issue and seek a ruling by the trial court.[40] Here, Debtors did not present the spendthrift exception argument to the bankruptcy court. Second, even if Debtors had presented the argument to the bankruptcy court, they did not adequately present the argument to this Court. The argument was not sufficiently addressed in the briefs Debtors filed on appeal, only at oral argument. Debtors apparently believe that merely mentioning the words "spendthrift trust" is sufficient. It is not, and a party waives those arguments that its opening brief inadequately addresses.[41]

In their Opening Brief, which they filed pro se, Debtors indicate the Decedent's Will contains a spendthrift provision,[42] but they do not specifically argue the spendthrift provision excludes Scott's interest from the bankruptcy estate. We are aware that courts are generally obliged to construe pro se

---

[38] *In re Howley*, 446 B.R. 506, 510 & n.12 (Bankr. D. Kan. 2011) (for purposes of § 541, courts analyze property interests under state law, since "Congress has generally left the determination of property rights in assets of a bankrupt's estate to state law") (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

[39] *See* Fla. Stat. Ann. § 736.0502 (West 2007); *Menotte v. Brown (In re Brown)*, 303 F.3d 1261, 1265 (11th Cir. 2002) (Florida law recognizes and enforces valid spendthrift trusts as long as beneficiaries cannot exercise control or dominion over the assets).

[40] *Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 739 (10th Cir. 2015) (raising issue and seeking a ruling are required to preserve argument for appellate review).

[41] *Harsco Corp. v. Renner*, 475 F.3d 1179, 1190 (10th Cir. 2007).

[42] *See Brief of Appellants* at 20, 41.

pleadings liberally.[43]  But, at the same time, it is not the proper function of the courts to assume the role of advocate for the pro se litigant[44] by constructing arguments and searching the record,[45] and we will not do so here.[46]

**B.      Approval of Settlement Agreement**

A settlement agreement may be approved if it is fair and equitable and in the best interests of the estate;[47] it is not required to be the "best result obtainable."[48]  The bankruptcy court's charge is to ensure the trustee exercised sound business judgment in reaching the compromise, not to second guess the trustee.[49]

The Tenth Circuit standard for determining whether a settlement in a bankruptcy case should be approved is a four-part test articulated by this Court in *In re*

---

[43]      *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[44]      *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

[45]      *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[46]      Additionally, we note that it is inconsistent for Scott to file a Probate Contest seeking to set aside the Decedent's Wills and at the same time attempt to benefit from the provisions thereunder to claim her interests are not part of the bankruptcy estate.  This is especially true in light of the fact that Debtors never disclosed any interests under the Wills or the Probate Contest until after they received their discharge and their case was closed.   Because an interest in a spendthrift trust is excluded from the estate rather than being exempt, we realize the bankruptcy schedules do not work perfectly in this situation.  But we see debtors as obligated to disclose all of their property interests, even if they "believe their assets are worthless or are unavailable to the bankruptcy estate." *United States v. Kurlemann*, 736 F.3d 439, 451 (6th Cir. 2013) (quoting *United States v. Van Allen*, 524 F.3d 814, 822 (7th Cir. 2008)).

[47]      *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D. Colo. 1989).

[48]      *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d  273, 278 (8th Cir. 2015).

[49]      *In re Indian Motocycle Co.*, 289 B.R. 269, 282-83 (1st Cir. 2003).

*Kopexa Realty Venture Co.*[50]  Trustee is the party with the burden of proving the

proposed settlement should be approved based on these factors:

1.    the probable success of the underlying litigation on the merits;

2.    the possible difficulty in collection of a judgment;

3.    the complexity and expense of the litigation; and

4.    the interests of creditors in deference to their reasonable views.[51]

Applying the *Kopexa Realty* factors to this case, the bankruptcy court

explained that the possible difficulty in collecting a judgment was not a factor, as

the money was held in a trust.  Likewise, the bankruptcy court noted that the

interests of creditors was not a factor because no creditor objected to the

Settlement Agreement.  As a result, in order to determine whether the Settlement

Agreement should be approved, the bankruptcy court focused on the probable

success of the underlying litigation and the complexity and expense of that

litigation.

The bankruptcy court determined Trustee's probable success in the

underlying litigation was low, and thus favored settlement.  It found:

> As to key relevant issues here, both attorneys agreed that the matter
> is complex, emotionally-charged litigation where the eventual
> outcome cannot be known with certainty.  However, after the Court's
> consideration of the evidence, the Court finds [Probate Defendants'
> attorney's] assessment of the Probate Suit more thorough and
> persuasive than that of [Scott's probate attorney].  Based on the
> evidence presented by the Trustee and the Debtors, the Court finds
> that there is a low probability of the Trustee succeeding on the merits
> of the Probate Suit.[52]

---

[50]    213 B.R. 1020 (10th Cir. BAP 1997).  *See also  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

[51]    *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).

[52]    *Order Approving Settlement* at 6, *in* Appellants' Amended App. at 45.  As an appellate court, we must defer to the bankruptcy court's findings when they are based on determinations regarding the credibility of witnesses. *In re Vaughn*, 765

(continued...)

In support of this conclusion, the bankruptcy court noted there is a strong presumption under Florida law honoring a decedent's final will and no hard evidence that Decedent lacked testamentary capacity or that undue influence was exercised. Further, the bankruptcy court found Trustee did not have a credible witness in Scott. The bankruptcy court was also concerned that based on Debtors' nondisclosure of the suit and subsequent valuation of zero in her bankruptcy filings, judicial estoppel might be used against Trustee in the Probate Contest based on the Tenth Circuit's decision in *Queen v. TA Operating, LLC*.[53] Debtors do nothing to adequately refute these findings. Therefore, the bankruptcy court correctly concluded the probability of success was low.

Regarding the complexity and expense of the litigation, the bankruptcy court first found the estate had no funds with which to pursue a one or two week-long trial that could cost over $100,000 to try in a forum 2,000 miles away. Further, the bankruptcy court determined Trustee would have to keep the bankruptcy estate open and delay any possible distribution to creditors while waiting for the litigation to get to trial, which based on the witnesses' testimony, could take as long as eighteen months. Therefore, the bankruptcy court concluded the complexity and expense of the litigation favored settlement, and Debtors offered nothing that would undermine this conclusion.

Settlements are looked upon with favor in bankruptcy proceedings,[54] and a bankruptcy court's order approving a negotiated settlement is entitled to deferential review. This Court can only reverse the Order Approving Settlement

---

[52]     (...continued)
F.3d 1174, 1180 (10th Cir. 2014).

[53]     734 F.3d 1081 (10th Cir. 2013).

[54]     *In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015); *TMT Trailer Ferry*, 390 U.S. at 424.

if there has been an abuse of discretion.[55]  After hearing testimony and taking evidence, the bankruptcy court appropriately evaluated the Settlement Agreement in light of the applicable *Kopexa Realty* factors.  It then ruled that Trustee's decision to settle the Probate Contest was a reasonable business judgment made to fulfill his statutory and fiduciary duty to the estate by maximizing the value of the asset.  Debtors' only real argument against the Settlement Agreement is the general assertion that it is "too low."[56]  Debtors have not demonstrated that the bankruptcy court abused its discretion in entering the Order Approving Settlement.[57]

---

[55]     *In re Kopexa Realty*, 213 B.R. at 1022.

[56]     In addition to the fact that a settlement is not required to be the highest possible result, Scott significantly overvalues her interest.  It is not accurate for Scott to suggest that Trustee compromised her interest worth approximately $1 million (based on a 1/3 interest in an estate valued at approximately $3 million) for $100,000.  Scott's interest under the Wills is potentially subject to several contingencies:  1) the possibility that Scott will predecease her mother; 2) the possibility that her mother may exercise her limited power of appointment to divest Scott of any interest; and 3) the possibility of reduction of the trust principal because it may be distributed for her mother's needs.  And again, enjoyment of her interest is postponed until some time in the future.  The contingencies and deferred enjoyment affect the value of her interest dramatically.  Additionally, a substantial amount of the estate had already been spent on legal fees in the Probate Contest, and continued litigation would only increase the fees the estate would bear, further reducing the value of Scott's interest.

[57]     The bankruptcy court also provided another basis for approving the Settlement Agreement.  It ruled that equity prevented Debtors from asserting Scott's interest in the Decedent's estate or the Probate Contest had a value higher than the $100,000 received under the Settlement Agreement because they neglected to timely disclose the interest and then claimed it had no value.  The bankruptcy court opined:

> Regardless of the precise name of the equitable doctrine the Court invokes, in equity and good conscience, the Court cannot permit the Debtors' constant and continuing bad faith with respect to this matter to derail the Trustee's efforts on behalf of their creditors.  By their bad faith conduct, the Debtors have forfeited the right to have their voices heard.

*Order Approving Settlement* at 10, *in* Appellants' Amended App. at 49.  In light of our conclusion that the bankruptcy court did not abuse its discretion in

(continued...)

-16-

## V.    CONCLUSION

The bankruptcy court correctly ruled that Scott's interest under the Decedent's Wills, or in the Probate Contest thereof, was property of the estate pursuant to § 541 because the Decedent died two months prior to the petition date.  Further, the bankruptcy court did not abuse its discretion in approving the Trustee's Settlement Agreement compromising the Probate Contest.  Therefore, its Order Approving Settlement is hereby AFFIRMED.[58]

[57]    (...continued)
approving the Settlement Agreement, we need not address the equities of the case.

[58]    Also pending before this Court is Appellee Dennis W. King's *Motion to Strike Portions of Appellants' Amended Appendix* (Docket No. 56 filed on February 5, 2015).  In light of our decision, we deny the Motion to Strike as moot.